INTERSTATE TRANSIT, INC., *v.* DICK LINDSEY, COUNTY
COURT CLERK.

(*Nashville,* December Term, 1929.)

Opinion filed June 28, 1930.

58

LACKEY & LOSER, for complainant, appellee.

R. E. MAIDEN, ROY H. BEELER and W. H. EAGLE, Assistant Attorneys-General, for defendant, appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal calls for a construction in application of Section 4, Chap. 89 of the Revenue Act of 1927. The bill was filed to recover privilege taxes paid to the defendant Clerk under protest by an Ohio corporation operating passenger motor busses, known as Colonial Stages, between Cincinnati, Ohio, through Kentucky and Tennessee, via Louisville, Nashville and Chattanooga, to Atlanta, Georgia. The paragraph of the Section under which collection was made is headed "Classification No. 3" and is as follows:

"Automobile Busses Operating Upon The Highways
of This State and Running Into Other States,
Not Liable Under The Foregoing Provisions.

(State Privilege Tax only.)

"Each person, firm or corporation operating an automobile bus carrying passengers upon the highways of this State for a distance of more than ten miles per trip, and not liable for a privilege tax under the foregoing provisions, shall pay as follows:

"Each bus carrying 5 passengers or less, per annum .................................$ 50.00

"Each bus carrying over 5 passengers and not more than 10 passengers, per annum ...... 100.00

"Each bus carrying over 10 passengers and less than 15 passengers, per annum ............ 200.00

"Each bus carrying 15 passengers and less than 20 passengers, per annum ................ 350.00

"Each bus carrying over 20 passengers and less than 30 passengers, per annum ............ 500.00

"Each bus carrying over 30 passengers, per annum ................................ 750.00

"Provided, that this tax shall be in lieu of all county, and municipal taxes; Provided, further, privilege taxes accruing under this heading shall go and belong exclusively to the General Funds of the State."

The corporation says that it transports interstate only, that therefore the Act does not, fairly construed, embrace it, and that if construed to embrace it the tax laid would be in contravention of the Commerce Clause of the Federal Constitution, (Art. 1, Sec. 8, Clause 3.)

The State insists, (1) that the corporation transports both intrastate and interstate, and therefore comes within the terms of the Act, and (2) that even though its busi-

ness is interstate only, the Act applies and the Federal Constitution does not prohibit its application.

The Chancellor found on the record made that the corporation was doing interstate transportation only, and that the State is precluded by the Commerce Clause of the Federal Constitution from collection of the tax. While the proof shows some disposition on the part of employees of the corporation to wink at and make easy an evasion of the interstate policy of the Corporation, through the use of tickets calling for destinations immediately over the State lines, we think the record as a whole sustains the finding of the Chancellor that the rules and regulations of, and the instructions issued by the Corporation, together with the form and recitals of its tickets, make out a case of interstate business only.

■ Conceding that the transportation is interstate, is this Corporation so operating over the highways of the State liable for this tax? A common carrier transporting by bus passengers both interstate and intrastate was held liable for a tax of like nature in *Gatlin* v. *Harrison*, 155 Tenn., 560. This Court followed the opinion of the U. S. Supreme Court in *Clark* v. *Poor, et al.*, since reported in 274 U. S. 557, 71 L. Ed., 1200, in which case the transportation was interstate only. The later case of *Sprout* v. *South Bend*, 277 U. S., 170, 72 L. Ed., 837 was in accord. Counsel for the Corporation frankly admit that these, and other cases, clearly recognize that a fee may be lawfully exacted by the State from one doing an interstate transportation business only, but say (1) that the Revenue Act of 1927 does not by its terms apply to one transporting passengers interstate only, and (2) that an essential distinction exists between a license fee going into a special highway fund, and a privilege tax

going into the general funds of the State. Counsel quote from *Sprout* v. *South Bend, supra,* as follows:

"It is true also that a State may impose even on motor vehicles engaged exclusively in interstate commerce, a reasonable charge as their fair contribution to the cost of constructing and maintaining the public highways." Citing, *Hendrick* v. *Maryland,* 235 U. S., 610, 622, 59 L. Ed., 385 and *Interstate Busses Corp.* v. *Blodgett,* 276 U. S., 245, 72 L. Ed., 551.

We think this section of our Revenue Act embraces in its terms busses transporting interstate. The caption of the pertinent paragraph reads, "busses . . . running into other states," and in its body it levies the tax on "each person, firm or corporation operating an automobile bus carrying passengers upon the highways of this State for a distance of more than ten miles per trip," and not liable under preceding paragraphs. A purpose is indicated by the ten mile restriction to avoid burdening interstate transportation unreasonably, relieving from this tax in cases of incidental and inconsequential crossing of, or entry over, the state lines in the course of through travel.

We come then to this single issue: Is the power of the State to impose "a reasonable charge" upon busses making use of its highways for interstate transportation limited to a regulation or license fee under the police power, as insisted, and confined to legislation which appropriates the fund exclusively and specifically to highway purposes, either of regulation or maintenance? This insistence seems to be met by Mr. Justice BRANDEIS in *Clark* v. *Poor, supra,* who, after referring to the contention therein made that "all of the tax is not used for maintenance and repair of the highways," said: "This if true, is immaterial. Since the tax is assessed for a

proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs.''

■ The Commerce Clause does not restrict the power of the State to tax unless (1) the tax is discriminatory, or (2) it is unreasonably burdensome on interstate commerce.

■ Here we have no discrimination. A like tax is levied by the different paragraphs of the pertinent section of the Act on all bus operators using the roads of the State, (1) from point to point within the State, (2) from point to point within a County, and (3) from a point within to a point without the State—provided the distance is as much as ten miles.

■ Nor is this tax apparently unduly burdensome. Not only is the charge approximately the same on all motor vehicles of like passenger carrying capacity, whether traveling wholly within the State or not, but it is fixed according to a ''uniform, fair and practicable standard.'' In *Hendrick* v. *Maryland, supra,* it was said:

''In view of the many decisions of this Court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the State itself; and so long as they are reasonable and are fixed according to some uniform, fair and practicable standard, they constitute no burden on interstate commerce. (Citing authorities.)''

And in *Clark* v. *Poor, supra,* it was said:

''The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to insure safety and

convenience and the conservation of the highways. (Citing authorities). Users of them although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire who make the highways their place of business may be properly charged an extra tax for such use. (Citing authorities)."

It is to be borne in mind that the privilege of use of highways, built and maintained by the states at enormous expense, is a privilege in a peculiar sense not applicable to the use by railways of their rights of way over roadbeds and rails owned and maintained by the railways, rather than the state. The language above quoted from opinions of the U. S. Supreme Court, one by Mr. Justice BRANDEIS and the other by Mr. Justice McREYNOLDS, suggests this distinction, and clearly recognizes the right of a state, not only to regulate under its police power all the users of its highways, but the right to charge therefor. It is not the placing of a tax charge upon such carriers interstate, which is prohibited by the Commerce Clause, but the placing of such tax in such a way as to burden and interfere with the free movement of commodities or passengers interstate. A charge is not a burden when its equivalent in goods, service or accommodation is exchanged therefor. The State furnishes expensively constructed and maintained highways for the accommodation of these carriers for hire and for profit. An interstate passenger bus might as consistently contend against a toll charge over a river bridge, as against a charge for traversing a State owned highway. The record shows that the fare for a single passenger across the state is $3.50, and the tax on a 20 passenger bus is $350 per year.

■ Assuming that a bus makes but one trip daily, it traverses more than 200 miles of this highway at a charge of less than $1 for each 15 to 20 passengers. The tax thus appears to be entirely reasonable.

■ Clear as it is, both on principle and authority, that the State may exact a charge for the use of its highways, without reference to whether the user comes, or whence he goes, we are not of opinion that the form or name of the charge is determinative of the right. Nor are we persuaded that the right is defeated by a failure to designate in the Act by restrictive terms the fund into which the proceeds are primarily to go. This is hardly more than a matter of book keeping. Once in the general funds of the State, as provided by this Act, it is subject to distribution and allocation in any direction where it may be found to be most needed. If it meets or relieves the State's requirements in one direction, more is left for application in another. It is a contribution to the up-keep of the State's government as a whole, and a large part of this up-keep cost is the item of highways.

In 5 R. C. L., p. 797, it is said that, "a state may impose a tax, reasonable in amount and not discriminatory, on automobiles using the highways of the State, though they belong to non-residents and are employed in interstate commerce." *Kane* v. *State,* 81 N. J. L., 594, 80 Atl., 453, Ann. Cas. 1912D., 237, is cited. In that case the Court recognizes that the license fee is a tax for revenue purposes and that it affects interstate commerce, but finding the charge reasonable and not discriminating, holds such a charge not obnoxious to the Federal Commerce Clause. Decisions of the U. S. Supreme Court affirming the right of a state to impose charges, although affecting interstate commerce, are referred to, where the state had constructed wharfs for the handling of freight,

or locks or booms in navigable streams, on the sound principle that the state "having expended moneys, either itself, or by the agencies created by it, in increasing the facility with which commerce, either interstate or intrastate, may be carried on, is entitled to charge a fair remuneration for the outlay made by it, and for the maintenance of the public work which it has constructed." And so applicable to the case before us is the further language of the opinion of the learned Chief Justice in that case that we quote at length:

"A very ordinary example of the exercise of this power is the construction of public roads known as 'turnpikes' by agencies created by the state, for the use of which tolls are permitted to be charged to persons using the same. Such public roads are open to the use of every person desiring to travel, upon them upon payment of the tolls authorized to be charged, but it has never been suggested, so far as we are aware (and certainly any such suggestion would be without merit), that a team and wagon bringing merchandise from another state is entitled to the use of these improved highways without the payment of the required toll because engaged in interstate commerce.

"Although, ordinarily, turnpikes are built and owned by corporations created by the state for the purpose of constructing and maintaining them, what the state may do indirectly through such agencies it may do directly,— that is, it may itself lay out and construct such improved public roads, and charge reasonable tolls to all persons using the same, without regard to the character of the business for which they are being used. And this is practically what New Jersey is now doing. It has spent millions of dollars in improving the roads of the state, and is yearly expending hundreds of thousands more in their

extension and maintenance. It has found that the use of these roads by heavy and swiftly moving automobiles results in their rapid deterioration, and increases largely the annual expense of maintaining them in proper condition. It considers, and rightly, we think, that a use of its roads which is so abnormally destructive should no longer be free, and, by the law of 1908, it imposes upon all of these vehicles which are driven over its roads a charge for such user for the purpose of raising revenue to be applied to their upkeep. Instead of charging a mileage fee, or toll, to be regulated by the distance traveled, it has seen fit to require the payment of a lump sum by the owners of such machines, for the privilege of using its roads, the charge being regulated by the horse power shown. . . . The charging of an annual sum for the use of its highways by automobiles, instead of a mileage fee, is clearly a matter within the discretion of the state. No constitutional objection lies in the way of a legislative body's prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. *Home Ins. Co.* v. *New York,* 134 U. S., 594, 10 S. Ct. 593, 33 U. S., (L. Ed.), 1025. The only limit upon its power is that the amount charged shall not be unreasonable; and there is no suggestion that such a condition is created by the present law.''

This decision was reviewed and affirmed by the U. S. Supreme Court in *Kane* v. *New Jersey,* 240 U. S., 160, 61 L. Ed., 222, and cited with approval in *Sprout* v. *South Bend, supra.*

We are of opinion that the Revenue Act applies and that the tax is valid. The decree must be reversed and the bill dismissed.