BOARD OF RAILROAD COM'RS ET AL., APPELLANTS, v.
AERO MAYFLOWER TRANSIT CO., RESPONDENTS.
No. 8646
Submitted April 13, 1946. Decided June 29, 1946.
172 Pac. (2d) 452

Mr. Paul T. Keller and Mr. Edwin S. Booth, Jr., both of Helena, for appellants and for respondents on cross-appeal.

Messrs. Toomey, McFarland & Hall and Mr. Edmond G. Toomey, all of Helena, for respondent, and for appellant on cross-appeal.

MR. JUSTICE MORRIS delivered the opinion of the court.

This controversy involves the question as to what extent a state may impose burdens in the way of licenses and taxes

upon motor carriers engaged in interstate commerce for operating their vehicles over the highways of the state. Such exactions are imposed upon the presumption that the state owns the highways within its borders, and the exactions are imposed as compensation for their use, and the revenue derived therefrom shall be expended to build, maintain and supervise such highways.

The Board of Railroad Commissioners of the state of Montana, hereinafter referred to as the Board, brought this suit to restrain the Aero Mayflower Transit Company, a Kentucky corporation, hereinafter referred to as the Company, from operating its motor vehicles over the highways of the state until it shall have complied with the provisions of Chapter 310 of the Political Code, known as the Motor Carriers Act, comprising sections 3847.1 to 3847.28 of the Revised Codes, inclusive. A restraining order was issued as prayed for by the Board, and the Company for some months discontinued operations in the state, but later filed a bond with the court and the court made an order permitting the Company to continue operations pending determination of the issues involved.

There is no dispute as to the facts. The Company is engaged in the motor transportation of used or second hand household goods and office furniture from one state to another for hire. It does not transport any goods of any nature or kind from one point to another in the same state. The only transportation it engages in, so far as it concerns this state, is the transportation of goods from another state to some point in this state, or it passes through this state to a destination in some third state. It alleges that it operates under permit No. 2944 issued to it by the Interstate Commerce Commission. It appears that in October 1935 the Board issued to the Company a "Class C" permit. In September 1939 the Board issued an order directing the Company to show cause why its permit to operate its vehicles over the highways of Montana should not be revoked. A hearing followed on October 6, 1939, and on the succeeding 9th of October the Board issued an order cancelling the permit

theretofore issued to the Company on the ground that the Company was using the highways of the state "In an unlawful and unauthorized" manner. The position of the Board appears to be that the Company may not use the highways of the state until it shall have applied to the Board and been granted a permit and paid the taxes and fees imposed by statute.

To the complaint of the Board in the instant action the Company interposed both a special and general demurrer, and such demurrers being overruled, the Company answered by way of general denial followed by cross-complaint. The cross-complaint at great length sets out the various acts of the parties showing the conflicting views of each which gave rise to the issues involved in the action. Briefly stated the Company contends that the Motor Carriers Act, supra, is not applicable to interstate commerce, but governs those engaged in intrastate commerce only; that sections 3847.16 and 3847.17, if applied to it, violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, and sections 1 and 11 of Article XII of the Constitution of Montana.

It appears that the state has heretofore and for some years collected two separate exactions from the Company: The Registration License Tax authorized by sections 1760-1760.10, Revised Codes; and the tax on sales of gasoline, authorized by sections 2381.1 to 2396.9, Revised Codes. The further exactions challenged by the Company in this action are (a) the "Ten Dollar per vehicle 'straight' or 'flat' tax," authorized by sections 3847.16 and 3847.17, Revised Codes, and (b) "The tax of one-half of one per cent of the amount *of gross revenue,* from wherever derived by the defendant in the United States, under section 3847.27," which is the construction the Company places upon that section, with a minimum fee of $15.00 for each vehicle operated by the Company in Montana.

While there is but one set of findings of fact, conclusions of law, and a single judgment, two separate actions were entered on the docket in the lower court, action No. 38175 in

which the Board was the complainant, and action No. 38765 in which the Company was the complainant. When the actions came on for hearing the parties stipulated in open court that the actions might be combined and tried as one, it being agreed that the issues in the two actions were practically the same.

The combined action was tried to the court sitting without a jury. The pleadings by the Company contained practically all the record facts involved in the controversy between the parties relative to the orders made by the Board and sundry hearings had before it. All the evidence adduced at the hearing before the trial court consisted of a brief examination of the counsel and chairman of the Board and the examination of the Vice-President and Manager of the Company. When both parties rested, the matter was submitted on briefs, and both parties later submitted proposed findings of fact and conclusions of law. The court made and entered its own findings of fact and conclusions of law, and made and entered its amended judgment, it having been found that the judgment first entered did not follow the findings of fact and conclusions of law. By conclusion of law number 2 the court held that section 3847.16, Revised Codes, "is a valid exercise of legislative authority and should be obeyed." By the amended judgment the Company was restrained and enjoined from operating its motor vehicles over the highways of the state of Montana until it shall have paid the amounts due the state as demanded under section 3847.16, Revised Codes, as follows: For the year 1938, $250; for the year 1939, $400; for the year 1940, $440, with interest on the respective amounts from the first day of January of each year mentioned until paid, with costs to the Board. It was "further ordered, adjudged and decreed that said Board be and it is enjoined and restrained from enforcing or applying against defendant any of the provisions of section 3847.27, Revised Codes of Montana, 1935, and in particular from exacting any of the fees and taxes therein specified." Both the Board and the Company appealed from that part of the judgment adverse to it. The effect of the

judgment of the trial court is to overrule the Company's contention that section 3847.16 is invalid as in conflict with the commerce clause of the Federal Constitution, and the Constitution of Montana.

The effect of the trial court's order enjoining the Board from enforcing any of the provisions of section 3847.27, Revised Codes, is to relieve the Company from the obligation to comply with the Board's demand to pay the tax of one-half of one per cent of its gross revenue or the minimum fee of $15.00 on each vehicle operated over the roads of the state.

Of the nine specifications of error assigned by the Company, the first is upon the court's overruling its demurrer to the complaint. The Company by its demurrer contends that as the Board is purely a creature of statute it has no power to sue; that by reason of the provisions of section 3806, Revised Codes, the state is a necessary party to these actions. The Board of Railroad Commissioners is created and its powers enumerated by Chapter 309 of the Political Code, comprising sections numbered 3779 to 3847 inc., Revised Codes, and Chapter 310 as heretofore mentioned is the Motor Carriers Act. By section 3847.3 of the latter chapter the enforcement of the Motor Carriers Act is vested in the Board of Railroad Commissioners. It is true, as contended by the Company, that section 3806 provides actions to enforce the Board's regulations under the law shall be brought by the Attorney General in the name of the state, but section 3847.14 of the Motor Carriers Act provides in part, "Orders and final determinations of the board in all proceedings pursuant to the provisions of this act shall be enforced in the manner provided for the enforcement of orders of the board of railroad commissioners by the provisions of chapter 309 of the political code, and laws amendatory thereof. Provided, further, that if any motor carrier shall operate in violation of the provisions of this act, or shall fail or neglect to obey any lawful order of the board, *the board or any party injured may* apply to any court of competent jurisdiction, in any county where such motor carrier is engaged

in business, for the enforcement of this act or such order; and the court shall enforce obedience thereto by writ of injunction, or other proper process, mandatory, or otherwise, and to restrain such carrier, its officers, agents, employees, or representatives from further violation of this act, or such order, or to enjoin upon it, or them, obedience to the same.'' We think this section must be construed along with section 3806, supra, and being a later enactment controls and modifies section 3806, and that the Board is authorized to maintain this action.

Specifications of error Nos. 2 and 3 are on alleged error of the court in refusing to adopt the findings of fact and conclusions of law proposed by the Company. Such proposed findings and conclusions are predicated upon the contention that as the Company is engaged in interstate transportation only the legislative acts under which the Board assumes to enforce the exactions in the way of fees and taxes are acts which apply exclusively to motor carriers engaged solely in intrastate commerce. In this connection the Company contends that section 3847.16, Revised Codes, is null and void by reason of its conflict with the Fourteenth Amendment to the Constitution of the United States and with section 27 of Article III, the due process clause, of the Constitution of Montana, and it is further contended that the fees and licenses which the Board demands the Company shall pay may, under the statute, be used for other purposes than improvement and maintenance of the highways of the state, and that when such exactions in the way of taxes and licenses are imposed upon the Company for other purposes they become in effect exactions on interstate commerce and section 3847.16, Revised Codes is therefore illegal and void as to the plaintiff, being in violation of clause three of section 8, Article I of the Constitution, the commerce clause of the United States.

Mr. Justice Brandeis, speaking for the court, clearly stated the rule applicable to the relative rights and power of the Federal Congress and state legislatures in regard to providing rules and regulations and imposing exactions in the way of

fees, licenses and taxes on motor carriers in the case of Interstate Transit, Incorporated v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953, a case arising under an act of the legislature of the state of Tennessee imposing a tax upon concerns operating interstate motor buses on the highways of the state. The controversy involved "a privilege tax graduated according to carrying capacity." A tax of $500 a year was imposed upon each vehicle seating more than twenty and less than thirty passengers. The motor company made a quarterly payment under protest and brought suit to recover the amount paid on the ground that the statute applied violated the commerce clause of the Federal Constitution. The trial court allowed recovery, but its judgment was reversed by the Supreme Court of the state, 161 Tenn. 56, 29 S. W. (2d) 257, and the case was appealed to the Supreme Court of the United States as above indicated. Justice Brandeis said:

"While a state may not lay a tax on the privilege of engaging in interstate commerce, Sprout v. [City of] South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. Kane v. New Jersey, 242 U. S. 160, 168, 169, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout v. South Bend, supra, pages 169, 170 of 277 U. S., 48 S. Ct. 502, [72 L. Ed. 833, 62 A. L. R. 45.] As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, or by the express allocation of the proceeds of the tax to highway purposes, as in Clark v. Poor, supra, or

otherwise where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. Hendrick v. Maryland, 235 U. S. 610, 612, 35 S. Ct. 140, 59 L. Ed. 385; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250-252, 48 S. Ct. 230, 72 L. Ed. 551. Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51, 47 S. Ct. 298, 71 L. Ed. 530. * * *

"The conclusion that the tax challenged is laid for the privilege of doing business and not as compensation for the use of the highways is confirmed by contrasting section 4 of the 1927 act with those statutes which admittedly provide for defraying the cost of constructing and maintaining highways and regulating traffic thereon. The former declares specifically in connection with the privilege tax on interstate busses that the proceeds 'shall go and belong exclusively to the General Funds of the State.' On the other hand, in the legislation by which Tennessee has provided for defraying the cost of constructing and maintaining the state highways and regulating motor traffic, it has been the consistent practice to prescribe that moneys raised for this purpose shall be segregated and go into the highway fund. The present system of motor regulations was inaugurated in 1915. At the same session, the Legislature created a State Highway Commission with power to construct and maintain highways. In these statutes and in many later ones—prescribing additional fees for the registration and licensing of motor vehicles, imposing gasoline taxes, laying a one-mill road tax, and authorizing the issue of bonds for the construction of highways and bridges— the Legislature provided that the proceeds of the fees, taxes, and bonds, and of the tolls collected on bridges, should be set apart as state highway and bridge funds to be expended by the commission exclusively for the construction and maintenance of highways or bridges. The absence in section 4 of this provision, which characterizes almost every other Tennessee statute relating to the construction and maintenance of high-

ways, or the regulation of motor vehicle traffic, is additional evidence that the present tax was not exacted for such purposes, but merely as a privilege tax on the carrying on of interstate business.

"It is suggested that a tax on busses graduated according to carrying capacity is common and is a reasonable measure of compensation for use of the highways. It is true that such a measure is often applied in taxing motor vehicles engaged in intrastate commerce. Being free to levy occupation taxes, states may tax the privilege of doing an intrastate bus business without regard to whether the charge imposed represents merely a fair compensation for the use of their highways. Compare Gundling v. [City of] Chicago, 177 U. S. 183, 189, 20 S. Ct. 633, 44 L. Ed. 725. But since a state may demand of one carrying on an interstate bus business only fair compensation for what it gives, such imposition, although termed a tax, cannot be tested by standards which generally determine the validity of taxes. Being valid only if compensatory, the charge must be necessarily predicated upon the use made, or to be made, of the highways of the state. Clark v. Poor, supra. In the present act the amount of the tax is not dependent upon such use. It does not rise with an increase in mileage traveled, or even with the number of passengers actually carried on the highways of the state. Nor is it related to the degree of wear and tear incident to the use of motor vehicles of different sizes and weights, except in so far as this is indirectly affected by carrying capacity. The tax is proportioned solely to the earning capacity of the vehicle. Accordingly, there is here no sufficient relation between the measure employed and the extent or manner of use to justify holding that the tax was a charge made merely as compensation for the use of the highways by interstate busses."

In an annotation in 135 A. L. R. 1358, it is said: " * * * it is well settled that in the absence of Federal legislation especially covering the subject, a state may prescribe regulations governing the use of motor vehicles on its highways, providing such

regulations do not impose undue burdens on interstate commerce, and are reasonable and not discriminatory."

In the case of South Carolina State Highway Department v. Barnwell Bros., 303 U. S. 177, 58 S. Ct. 510, 513, 82 L. Ed. 734, the question of the right of the state to restrict the width of motor vehicles operated on the state highways and the gross load carried, was involved. Mr. Justice Stone, speaking for the court, said:

"Ever since Willson v. Black Bird Creek Marsh Co., 2 Pet. 245, 7 L. Ed. 412, and Cooley v. Board of Port Wardens [etc.], 12 How. 299, 13 L. Ed. 996, it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce but which, because of their local character and their number and diversity, may never be fully dealt with by Congress. Notwithstanding the commerce clause, such regulation in the absence of congressional action has for the most part been left to the states by the decisions of this Court, subject to the other applicable constitutional restraints.

"The commerce clause by its own force, prohibits discrimination against interstate commerce, whatever its form or method, and the decisions of this Court have recognized that there is scope for its like operation when state legislation nominally of local concern is in point of fact aimed at interstate commerce, or by its necessary operation is a means of gaining a local benefit by throwing the attendant burdens on those without the state. Robbins v. Shelby County Taxing District, 120 U. S. 489, 498, 7 S. Ct. 592, 30 L. Ed. 694; Caldwell v. North Carolina, 187 U. S. 622, 626, 23 S. Ct. 229, 47 L. Ed. 336. It was to end these practices that the commerce clause was adopted. See Gibbons v. Ogden, 9 Wheat. 1, 187, 6 L. Ed. 23; Brown v. Maryland, 12 Wheat. 419, 438, 439, 6 L. Ed. 678; Cooley v. Board of Port Wardens [etc.], supra; [In re] State Freight Tax, 15 Wall. 232, 280, 21 L. Ed. 146; State Tax on Railway Gross Receipts, 15 Wall. 284, 289, 297, 298, 21 L. Ed. 164; Cook v. Pennsylvania, 97 U. S. 566, 574, 24

L. Ed. 1015; [State of] Maine v. Grand Trunk R. Co., 142 U. S. 217, 12 S. Ct. 121, 163, 35 L. Ed. 994; Baldwin v. G. A. F. Seelig, Inc., 294 U. S. 511, 522, 55 S. Ct. 497, 500, 79 L. Ed. 1032, 101 A. L. R. 55; II Farrand * * *. Few subjects of state regulation are so peculiarly of local concern as is the use of state highways. * * * Unlike the railroads, local highways are built, owned and maintained by the state or its municipal subdivisions. The state has a primary and immediate concern in their safe and economical administration. The present regulations, or any others of like purpose, if they are to accomplish their end, must be applied alike to interstate and intrastate traffic both moving in large volume over the highways. The fact that they affect alike shippers in interstate and intrastate commerce in large number within as well as without the state is a safeguard against their abuse. * * *

"The nature of the authority of the state over its own highways has often been pointed out by this Court. It may not, under the guise of regulation, discriminate against interstate commerce. But, 'In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.' Morris v. Duby, 274 U. S. 135, 143, 47 S. Ct. 548, 550, 71 L. Ed. 966. This formulation has been repeatedly affirmed, Clark v. Poor, 274 U. S. 554, 557, 47 S. Ct. 702, 703, 71 L. Ed. 1199; Sprout v. [City of] South Bend, 277 U. S. 163, 169, 48 S. Ct. 502, 504, 72 L. Ed. 833, 62 A. L. R. 45; Sproles v. Binford, 286 U. S. 374, 389, 390, 52 S. Ct. 581, 586, 76 L. Ed. 1167; cf. Morf v. Bingaman, 298 U. S. 407, 56 S. Ct. 756, 80 L. Ed. 1245, and never disapproved. This Court has often sustained the exercise of that power, although it has burdened or impeded interstate commerce. * * * Restrictions favoring passenger traffic over the carriage of interstate merchandise by truck have been similarly sustained, Sproles v. Binford, supra; Bradley v. Public Utilities Comm.,

289 U. S. 92, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131, as has the exaction of a reasonable fee for the use of the highways, Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Morf v. Bingaman, supra; cf. Ingels v. Morf, 300 U. S. 290, 57 S. Ct. 439, 81 L. Ed. 653.

"In each of these cases regulation involves a burden on interstate commerce. But so long as the state action does not discriminate, the burden is one which the Constitution permits because it is an inseparable incident of the exercise of a legislative authority, which, under the Constitution, has been left to the states. * * *

"When the action of a Legislature is within a scope of its power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for the legislative body, on which rests the duty and responsibility of decision. Jacobson v. [Commonwealth of] Massachusetts, 197 U. S. 11, 30, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Laurel Hill Cemetery v. [City and County of] San Francisco, 216 U. S. 358, 365, 30 S. Ct. 301, 54 L. Ed. 515; Price v. Illinois, 238 U. S. 446, 451, 35 S. Ct. 892, 59 L. Ed. 1400; Hadacheck v. Sebastian, 239 U. S. 394, 408, 414, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B 927; Thomas Cusack Co. v. Chicago, 242 U. S. 526, 530, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; Euclid v. Ambler Realty Co., 272 U. S. 365, 388, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works, 274 U. S. 325, 328, 47 S. Ct. 594, 595, 71 L. Ed. 1074; Standard Oil Co. v. [City of] Marysville, 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. Ed. 856. This is equally the case when the legislative power is one which may legitimately place an incidental burden on interstate commerce. It is not any the less a legislative power committed to the states because it affects interstate commerce, and courts are not any the more entitled, because interstate commerce is affected, to substitute their own for the legislative

judgment. Morris v. Duby, supra, 274 U. S. 135, 143, 47 S. Ct. 548, 549, 71 L. Ed. 966; Sproles v. Binford, supra, 286 U. S. 374, 389, 390, 52 S. Ct. 581, 585, 76 L. Ed. 1167; Minnesota Rate Cases, supra, 230 U. S. 352, 399, 400, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A., N. S., 1151, Ann. Cas. 1916A, 18; Smith v. St. Louis & S. W. R. Co., 181 U. S. 248, 257, 21 S. Ct. 603, 45 L. Ed. 847; Reid v. Colorado, 187 U. S. 137, 152, 23 S. Ct. 92, 47 L. Ed. 108; New York ex rel. Silz v. Hesterberg, 211 U. S. 31, 42, 43, 29 S. Ct. 10, 53 L. Ed. 75.''

The foregoing authorities clearly establish the right of the ▮ state to impose upon motor carriers engaged in interstate commerce exactions by way of taxes and licenses for use by such motor carriers of the state highways when such exactions are necessary to build, maintain, and supervise the highways. In addition the exactions must be such as are reasonably necessary for the purposes mentioned, and must not be discriminatory as between state and interstate carriers. It further appears to be the established rule of the federal courts to require the interstate carrier who challenges the right of the state to impose such licenses and taxes to affirmatively show that the exactions demanded are not necessary for the purposes mentioned or are discriminatory. In other words the burden is on the carrier to show wherein the exactions are unlawful as to him.

Adverting to the contention of the company that section 3847.27 is invalid, the trial court having so held, the Board contends the court's holding was erroneous.

The company's position is that as section 3847.23, Revised ▮ Codes, provides in part that it shall not be necessary for an interstate motor carrier to make any showing of public convenience and necessity in order to obtain a permit to operate in Montana, that it therefore necessarily follows that the company being an interstate carrier section 3847.27 does not apply to it, but only to intrastate carriers. To the contention that the Motor Carriers Act does not apply to the company, we do not agree. The Act was obviously intended to apply to all

motor carriers operating over the highways of the state. See section 3847.1(h) and 3847.16, Revised Codes. It clearly appears that the legislature was aware of decisions of the Supreme Court of the United States with which the Act might conflict and endeavored to have the Act so drawn as to meet such a situation. By section 3847.24 of the Act provision is made by which if any part or provision is found to be unconstitutional it shall not affect the validity of the balance of the Act. Certain parts of section 3847.23, supra, were obviously incorporated in the Act for the same purpose, particularly that part of such section which provides that it shall be unnecessary for any interstate motor carrier to make any showing of public convenience and necessity in order to obtain a state permit. However, elimination of the part of section 3847.23 to which we have just referred does not abate the tax imposed by section 3847.27, Revised Codes. The company in support of its contention that Chapter 310 was designed to control intrastate motor carriers only, cites Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286, and Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 69 L. Ed. 627; twin cases, the opinion in both being delivered by Mr. Justice Brandeis. Both were rendered in January, 1925, and the Motor Carriers Act was not enacted until 1931, six years later.

In the first case Buck desired to operate an auto stage line for hire between Portland, Oregon, and Seattle, Washington. Oregon granted Buck a certificate of public convenience and necessity, but the state of Washington refused such a certificate. When the case in the course of litigation reached the Supreme Court of the United States, it was held that "the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden, but to obstruct it." [267 U. S. 307, 45 S. Ct. 326.] That conclusion was predicated upon the proposition that the "primary purpose (of the statute requiring such a certificate) is not regulation with a view to safety or to conservation of the highways, but the prohibition

of competition. It determines, not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons, while permitting it to others for the same purpose and in the same manner.'' The decision in the Bush case was practically to the same effect and on similar facts. It is obvious that the two decisions were based upon the ground of unlawful discrimination. There is no showing of discrimination in the case at bar. All motor carriers are made subject to the same regulations, under our Motor Carriers Act.

The trial court held in the case at bar, ''That section 3847.27, Revised Codes of Montana, 1935, as applied to the defendant is invalid for the reason that it fails to specify any method by which the gross operating revenue of the defendant in the state of Montana for any year may be determined, and for the further reason that the Public Service Commission of the state of Montana mentioned as the administrative body in sections 3847.26, 3847.27 and 3847.28, Revised Codes of Montana 1935, has nothing to do with the regulation and supervision of motor carriers using the public highways of the State of Montana.''

On the question of the constitutionality of section 3847.27, this court said in the case of State v. Stark, 100 Mont. 365, 52 Pac. (2d) 890, 891, that: ''In determining whether an act of the legislative assembly is invalid or not, it has long been the established rule of this court that the constitutionality of any act shall be upheld if it is possible to do so (State ex rel. Tipton v. Erickson, 93 Mont. 466, 19 Pac. (2d) 227; Hale v. County Treasurer, 82 Mont. 98, 105, 265 P. 6), and that a statute 'is prima facie presumed to be constitutional, and all doubts will be resolved in favor of its validity. State ex rel. Toomey v. State Board of Examiners, 74 Mont. 1, 238 Pac. 316, 320. The invalidity of a statute must be shown beyond a reasonable doubt before this court will declare it to be unconstitutional. Herrin v. Erickson, 90 Mont. 259, 2 Pac. (2d) 296. And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. Hill v. Rae, 52

Mont. 378, 158 Pac. 826, 828, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210."

By reading sections 3847.27 and 3847.16 together, which the rule on statutory construction enjoins, State v. Bowker, 63 Mont. 1, 205 Pac. 961, it becomes clear that the clause in section 3847.27 imposing upon the company a tax of one-half of one per cent. based upon its "gross operating revenue" that in the use of this phrase by the legislature the gross revenue derived from operations in Montana was intended and not the company's gross revenue from all sources. No other reasonable intention is conveyed by paragraph (b) of section 3847.16 which is as follows:

"When transportation service is rendered partly in this state and partly in an adjoining state or foreign country, motor carriers shall comply with the provisions of this act relating to the payment of compensation and to the making of annual or special reports or statements herein required, and shall show the total business performed within the limits of this state and such other information concerning its operation within this state as may be required by the board as fully and completely and in the same manner as herein required of motor carriers operating wholly within this state."

"The legislative intention * * * is controlling." State v. Smith, 57 Mont. 563, 574, 190 Pac. 107, 110, and cases cited. There could have been but one purpose in incorporating paragraph (b) in section 3847.16, namely, to ascertain the gross revenue derived by the company's operations in Montana in order to use that as a basis for the levy of the tax of one-half of one per cent.

It was said in United States v. Freeman, 3 How. 556, 44 U. S. 556, 11 L. Ed. 724, "A thing which is within the intention of the makers of the statute, is as much within the statute as if it were in the letter." Even if it be admitted that the manner of arriving at a sound basis upon which the tax on gross revenue is not provided by the statute, a contention to which we do not agree, no difficulty would arise in putting into effect

the minimum fee of $15.00 required for each company vehicle operated within the state.

Furthermore, in this connection it is our opinion that when ▮ the legislature enacts a statute imposing the duty of enforcement of such statute upon a particular board or officer of the state but fails or neglects to clearly prescribe and incorporate in the Act the mode of enforcement, that such officer or board may adopt any fair and reasonable mode of enforcement designed to effectuate the purposes of the Act. In other words, when a duty is imposed upon a particular officer or board in express terms such other duties are implied as are necessary to carry into effect those that are expressed.

Such, we think, is the effect of the rule laid down in the case of Morse v. Granite County, 44 Mont. 78, 119 Pac. 286, and followed in Fisher v. Stillwater County, 81 Mont. 31, 261 Pac. 607; Arnold v. Custer County, 83 Mont. 130, 269 Pac. 396, and State v. Stark, 100 Mont. 365, 52 Pac. (2d) 890.

We do not agree with the trial court that the Public Service Commission "has nothing to do with the regulation and supervision of motor carriers using the public highways." The functions and duties of the Board relative to railroads, motor carriers, common carriers of oil, the inspection of boats and supervision of navigation, and public utilities, are closely related and the administration of the whole is upon a Board composed of the same three persons, and by reference many of the rules and regulations expressly applicable to one are also made applicable to another. The accounts and finances relating to each of these legislative Acts must of course be kept separate and distinct, but all are under the same management and we see no sound reason why the same overall board, while convened for the purpose of dealing with some railroad problem, may not at the same time dispose of questions relating to motor carriers or any other duty imposed upon the Board. The necessity of having minutes of such meetings kept separately as to the particular things done does not affect the powers

of the Board to dispose of, at the same time, other duties coming under its supervision.

The terms "Board of Railroad Commissioners" and "Public Service Commission" are used interchangeably and we think it was the legislative intent by section 3847.27 to use the words "public service commission" as including the "board of railroad commissioners." If this were not so, then section 3847.27 would have no meaning whatsoever, since strictly speaking the Public Service Commission does not issue certificates of public convenience and necessity.

The company contends that in fixing the exactions imposed upon it, no distinction is made between large and small vehicles, or heavy and light loads, nor the number of miles travelled over the highways. There is merit in this contention. The heavier the load and the greater the number of miles travelled the greater the wear and tear on the roadway. It is obvious that the tax set up in section 3847.27 was for the purpose of meeting this situation. A short trip and a light load would bring the carrier but little revenue whereas the heavier traffic and longer hauls would produce more revenue and require more taxes. Some discrimination may arise from the tax but in that respect we refer to what was said in Hilger v. Moore, 56 Mont. 146, at page 176, 182 Pac. 477, at page 484 where we find in the case of Travelers' Ins. Co. v. Connecticut, 185 U. S. 364, 371, 22 S. Ct. 673, 676, 46 L. Ed. 949, this rule applied: "But, further, the validity of this legislation does not depend on the question whether the courts may see some other form of assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens. It is enough that the state has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against nonresidents."

Again it is contended that revenue is demanded from the Company to be used to pay salaries of the Board members- and for other alleged unlawful purposes. We think a full and complete answer to all such contentions is found in the case of Clark v. Poor, 274 U. S. 554, at pages 556, 557, 47 S. Ct. 702 at page 703, 71 L. Ed. 1199, where Mr. Justice Brandeis, speaking for the court, said: .

"The plaintiffs claim that, as applied to them, the act violates the commerce clause of the federal Constitution. They insist that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the state; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, * * * for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. Compare Packard v. Banton, 264 U. S. 140, 144, 44 S. Ct. 257, 68 L. Ed. 596.

"There is no suggestion that the tax discriminates against interstate commerce. Nor is it suggested that the tax is so large as to obstruct interstate commerce. It is said that all of the tax is not used for maintenance and repair of the highways; that some of it is used for defraying the expenses of the com-

mission in the administration or enforcement of the act, and some for other purposes. This, if true, is immaterial. Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs.'' To the same effect is Dixie Ohio Express Co. v. State Revenue Comm. of Georgia, 306 U. S. 72, 59 S. Ct. 435, 83 L. Ed. 495.

In differentiating between the numerous decisions of the United States Supreme Court wherein questions involving interstate commerce were considered and determined it is important to keep in mind that actions involving the use of state highways for the purposes of interstate commerce have no relation to actions relating to railroads, telephone or telegraph lines, sleeping car or freight line owners, where all such facilities are owned by the particular public utility, and motor carriers operating over highways owned by the state. In the case at bar Montana owns the highways over which the company operates its vehicles and the taxes imposed are for the use of the state highways. The revenue collected is devoted to the building, repairing and policing of such highways, and that which the state furnishes is an aid, not a burden to interstate commerce.

The judgment of the lower court in restraining the Company from operating its vehicles over the highways of Montana until it shall have paid the exactions imposed pursuant to section 3847.16, Revised Codes, as set out in such judgment, is affirmed. As to the order of the lower court restraining the Board from enforcing the exactions imposed upon the Company by section 3847.27, Revised Codes, the cause is remanded with instructions to vacate and set aside such order, and enter judgment in favor of the Board in accordance with this opinion.

Mr. Chief Justice Lindquist and Associate Justices Adair and Angstman concur.

Mr. Justice Cheadle:

Because of lack of time to study the foregoing decision, due to recess by the court, I reserve my opinion with the under-

standing that it shall become a part of the foregoing, or a dissent thereto.

Mr. Justice Cheadle (dissenting).

The majority opinion is based upon and attempted to be supported by the fallacious premise that the exactions in question "are imposed upon the presumption that the state owns the highways within its borders, and the exactions are imposed as compensation for their use, and the revenue derived therefrom shall be expended to build, maintain and supervise such highways." I can find no support for any such presumption. I fully appreciate the problem of maintaining our highways, and the necessity of exacting a fair compensation for their use by foreign-owned trucks, but I cannot, as a matter of expediency, lend my support to the exaction of such compensation by judicial edict.

Section 3847.27, Revised Codes, provides: "In addition to all other licenses, fees and taxes imposed upon motor vehicles in this state and in consideration of the use of the highways of this state, every motor carrier holding a certificate of public convenience and necessity issued by the public service commission, shall * * * file with the public service commission a statement showing the gross operating revenue of such carrier for the preceding three months of operation, or portion thereof, and shall pay to the board a fee of one-half of one per cent of the amount of such gross operating revenue; provided, however, that the minimum annual fee which shall be paid by each class A and class B carrier for each vehicle registered and/or operated under the provisions of the motor carrier act shall be thirty dollars ($30.00) and the minimum annual fee which shall be paid by each class C carrier for each vehicle registered and/or operated under the motor carrier act shall be fifteen dollars ($15.00)."

Section 3847.28 provides: "All fees collected from motor carriers shall be, by the commission, paid into the state treasury and shall be, by the state treasurer, placed to the credit of the motor carrier fund. * * *" Disposition of this fund is directed

by section 3847.17, as follows: "Such funds shall be available for the purpose of defraying the expenses of administration of this act and the regulation of the businesses herein described, and shall be accumulative from year to year. All expenses of whatsoever kind or nature of the board incurred in carrying out the provisions of this act shall be audited by the state board of examiners and paid out of the 'motor carrier fund.' * * *''

Since the defendant company is engaged solely in interstate commerce, three questions involving the interpretation of the quoted sections immediately present themselves, viz.:

1. Does section 3847.27 include only motor carriers holding a certificate of public convenience and necessity, or does it contemplate all motor carriers? Section 3847.23 contains the provision "that it shall not be necessary for any interstate or international motor carrier, in order to obtain a permit as herein provided, to make any showing of public convenience and necessity, except as to the transportation of passengers and/or freight between points within this state * * *." It would seem that the wording of section 3847.27 restricts the operation of that section to motor carriers to those holding certificates of public convenience and necessity. The defendant company, being engaged only in interstate commerce, is not included within such class.

2. In computing the amount of the exaction prescribed by section 3847.27 (one-half of one per cent of the amount of the gross operating revenue), what is to be the measure of the gross operating revenue of the carrier employed only in interstate commerce? Is it to be based upon the proportionate mileage travelled over Montana highways of the aggregate distance travelled by the vehicle? Or shall it be calculated upon the gross revenue of the carrier from all sources? If the provisions of this section were intended to include interstate motor carriers, it is apparent that the gross operating revenue, from whatever source, must be the yardstick of the exaction. Such an exaction would be so manifestly unfair, discriminatory

and unreasonable as to impel the conclusion that the legislature did not intend the inclusion of strictly interstate carriers. It is urged that the practice of the plaintiff board has been to exact only the minimum fee prescribed. But such is only a minimum, and is not an alternative exaction; and the test to be applied, of course, is what might be done under the statute, not what has been done.

3. Does the purpose for which the tax is collected and applied constitute an interference with and a burden upon interstate commerce, prohibited by the federal Constitution and statutes, as defined by the Supreme Court of the United States? The majority opinion quotes extensively from the leading case of Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 381, 75 L. Ed. 953. But it would seem to me that the holding of that case refutes rather than supports the conclusion arrived at here. As quoted in the majority opinion, Justice Brandeis in his opinion said:

"While a state may not lay a tax on the privilege of engaging in interstate commerce, Sprout v. [City of] South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, it may impose upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. * * * As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, * * * or by the express allocation of the proceeds of the tax to highway purposes, * * * or otherwise where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. * * *

"Being free to levy occupation taxes, states may tax the

privilege of doing an intrastate bus business without regard as to whether the charge imposed represents merely a fair compensation for the use of their highways. * * * But since a state may demand of one carrying on an interstate bus business only fair compensation for what it gives, such imposition, although termed a tax, cannot be tested by standards which generally determine the validity of taxes. Being valid only if compensatory, the charges must be necessarily predicated upon the use made, or to be made, of the highways of the state. * * * In the present act the amount of the tax is not dependent upon such use. It does not rise with an increase in mileage travelled, or even with the number of passengers actually carried on the highways of the state. Nor is it related to the degree of wear and tear incident to the use of motor vehicles of different sizes and weights, except in so far as this is indirectly affected by carrying capacity. The tax is proportioned solely to the earning capacity of the vehicle. Accordingly, there is here no sufficient relation between the measure employed and the extent or manner of use to justify holding that the tax was a charge made merely as compensation for the use of the highways by interstate busses.''

For two reasons, then, it is apparent that the imposition in question is not, and was not intended to be, exacted as compensation for use of state highways by interstate motor carriers. First, the act specifically provides that the funds derived shall be used for defraying the expenses of the board of Railroad Commissioners in administering the Motor Carrier Act. This court will take judicial notice of the fact that the building and maintenance of state highways, and regulation of traffic thereon, is a function of the state highway department, and entirely foreign to the prescribed functions and powers of the Railroad Commission. Secondly, the amount and character of the attempted imposition bear no relation to the only purpose for which such imposition would be valid, that is, as compensation for use of the state highways. And this is so no matter which method is applied in determining the gross

operating revenue. As in the Lindsay case, this exaction is proportioned only to the earnings of the vehicle. I think there can be no question but that the state has power, by appropriate legislation, to require compensation for the use of its highways by vehicles engaged in interstate commerce. I further think that such legislation must emanate from the legislative arm of the state government. This court may, perhaps, point out that the state is overlooking a possible source of revenue for the maintenance of its highways, but may not enact the legislation for the purpose of its collection, under the guise of judicial interpretation.

Rehearing denied September 19, 1946.

Affirmed United States Supreme Court 92 L. Ed. 153.