MR. JUSTICE DALY and JOHN C. HARRISON,
(dissenting) :
We respectfully dissent, having in mind the burden that must be carried by a plaintiff when he launches a constitutional attack on a statute enacted by the Montana legislature as approved in Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, 220, 293 P. 294, 304, in this language:
“ ‘In the ease of statutes passed by the legislative assembly and assailed as unconstitutional, the question is not whether it is possible to condemn, but whether it is possible to uphold. We stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, beyond reasonable doubt.’ ”
The problems here were before this Court, in part, in this Court’s ruling in Peter Kiewit Sons’ Co. v. State Board of Equalization, 161 Mont. 140, 505 P.2d 102, decided January 10, 1973. The central issue in Kiewit was tax discrimination based on classification between public and private contractors. The same problem arises in the instant case between public motor carriers and private motor carriers. The reasons and purposes for the tax may differ but the underlying problem of an alleged unconstitutional classification resulting in tax discrimination remains the same.
In Kiewit, there was an in depth discussion including most of the Montana and federal citations on the question of classification for taxing purposes between contractors doing public work *496 and contractors doing private work. There the court said, quoting with approval language from State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 403 P.2d 635.
“Since that was the same point raised in Schultz-Lindsay, a review of that decision will give us a view of Montana law on the issue of tax discrimination. There, we stated that the legislature may impose a license tax on certain occupations and not on others, as long as ‘ arbitrary and unreasonable classifications ’ are not permitted. Schultz-Lindsay, p. 398, 403 P.2d 640.
“In Shultz-Lindsay at p. 390, 403 P.2d at p. 640, the Court citing State v. Sunburst Refining Co., 73 Mont. 68, 235 P. 428, stated that in making such classifications:
“ ‘ “Equal protection of the law is seldom, if ever, obtained; and because of the very frailty of human agencies, the authorities all recognize the right of the legislative branch of government to make reasonable classifications of subjects, for property or occupation taxes * * * and if the classification is reasonable, and if all of the subjects within a given class are accorded the same treatment, the legislation cannot be said to deny to anyone within such class the equal protection of the law, even though the burden imposed upon him may be more onerous than that imposed upon a member of another class. [Citing cases] But to justify such discriminatory legislation, and avoid the condemnation of the Fourteenth Amendment to the federal Constitution, the classification must be reasonable — that is, must be based upon substantial distinctions which really make one class different from another. [Citing ease] (Emphasis ours.) ” ’
“Later in the same opinion at p. 392, 403 P.2d at p. 641, the Court said:
“ ‘ “The constitutional safeguard against unjust discrimination in legislation of this type is well defined by the decisions everywhere, and that is, that the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be *497 treated alike. Mills v. State Board of Equalization, 97 Mont. 13, 31, 33 P.2d 563.” (Emphasis ours.)’ ”
Applying then, the above language, the fact that the operation of section 8-127, R.C.M. 1947, creates the class motor carriers for hire hauling nonexempt commodities over Montana highways, does not per se render the statute unconstitutional. If the class, is based on a substantial distinction that really makes one class different from another, as set forth above, the classification is. reasonable and constitutional. It would appear that there is as sound, if not sounder, factual basis for the distinction between public carriers for hire and private carriers not for hire than between public and private contractors.
The exempt commodities contained in section 8-101, R.C.M. 1947, merely conform to those exemptions granted to interstate-carriers for hire under the Interstate Commerce Act, § 303(b), and are thus preempted from state regulation when moving in interstate commerce. Baltimore Ship. & Reciv. Ass’n. v. Public Util. Com’n. of Cal., 268 F.Supp. 836 (D.C.Cal. 1967), affirmed. 389 U.S. 583, 88 S.Ct. 694, 19 L.Ed.2d 783.
Plaintiff-respondent Garrett has presented a convincing case of “onerous” burden on it when compared to private haulers, such as Safeway and Buttreys etc., all private and outside the classification. This is probably true, but our case law above cited distinctly and squarely states that this makes no difference so-long as those within the given class are accorded the same treatment. So, this argument would be irrelevant when directed to-the matter of constitutionality, but not so if directed to the legislature.
This leaves the matter of the railroad and its subsidiary carriers to be considered. The subsidiary carrier of the railroad being within the class under consideration. The argument that, the subsidiary carrier for hire has an arrangement with the railroad to “fix” its rates and thus pay less tax on the same formula must fail for the obvious reason that section 8-127, R.C.M. 1947, which authorizes the tax or fee, does not authorize or contemplate this kind of situation and if the parties complained of' *498 have found a “loophole” through “rate” fixing, then this is a .matter to be brought to the attention of the proper Montana authirty. It has no bearing on the constitutionality of section 8-127, R.C.M. 1947.
We believe whether the burden imposed by the statute is “discriminatory” or “confiscatory” was decided by this Court in Rwy. Com. v. Aero Mayflower Transit Co., 119 Mont. 118, 136, 172 P.2d 452, 461, cited in the majority opinion, when the Court citing from Hilger v. Moore, 56 Mont. 146, 182 P. 477 and Travelers’ Ins. Co. v. Connecticut, 185 U.S. 364, 22 S.Ct. 673, 46 L.Ed. 949, said:
“* * * the validity of this legislation does not depend on the question whether the courts may see some other form of ■assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substiute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens.”
Aero Mayflower was affirmed by the United States Supreme Court, 332 U.S. 495, 502, 68 S.Ct. 167, 171, 92 L.Ed. 99. There that court spoke concerning the statute as “prohibitive” in this language:
“ * * * it is not material to the validity of either tax that the state also imposes and collects the vehicle registration and license fee and the gasoline tax on gasoline purchased in Montana.
* *
“ ‘Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use.” Clark v. Poor, supra, 274 U.S. [554] at page 557, 47 S.Ct. [702] at page 703, 71 L.Ed. 1199.”
The “arbitrary” feature of this kind of tax has been treated in other jurisdictions. In New Jersey a flat rate tax of % cent per mile was held constitutional in Safeway Trails, Inc. v. Fur *499 man, 41 N.J. 467, 197 A.2d 366, 376, citing from Capitol Greyhound Lines v. Brice, 399 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053:
“A mileage tax is normally considered to be prima facie compensatory because it is directly proportional to road use. But a formula not related to road use will be upheld unless the challenger shows that the result of the tax is an unreasonable burden on interstate carriers.”
Garrett’s claim that this is a “tax on the privilege of doing business” was again directly answered in Aero Mayflower by pointing out that the act itself provides “in consideration of the use of the highways of this state” motor carriers for hire will be required to pay a gross revenue fee.
The challenge to the tax formula itself as being “arbitrary”, “unreasonable”, “indefinite” and “lacks precision” does not square with the record or decided cases in this area. Garrett’s, comptroller, Mr. Hawkins, testified on cross-examination that he had never had any trouble applying the formula. By Garrett’sown admission, it would seem the formula is neither “ indefinite ” nor does it “lack precision”.
As to the issue of section 8-127, R.C.M. 1947, being “unreasonable ’ ’, the logic on that point is difficult to follow. It is claimed that the tax “bears no relationship to the use of Montana highways”. An examination of the formula itself seems to make the relationship between the two obvious.
In the New York case of Mid-States Freight Lines, Inc. v. Bates, 200 Misc. 885, 111 N.Y.S.2d 568, 573, cert. den. 345 U.S. 908, 73 S.Ct. 648, 97 L.Ed. 1344, the court upheld the validity of a taxing formula challenged as not being truly compensatory for road use, stating:
“The formula employed by a state to exact reasonable compensation from carriers for the privilege of using its highways is not of crucial importance. The court has recognized the practicable impossibility of devising a formula which will result in_ exact or mathematical precision in equating the tax to the privilege conferred. Rough approximation, rather than precision wilL suffice and if the tax is not unreasonable it will be upheld. ’ ’
*500 It is therefore, our opinion that the burden to be carried by plaintiff-respondent in a successful constitutional challenge has not been met and the judgment of the trial court should be rerersed.