No. 12246

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

GARRETT FREIGHTLINES, INC.,
a corporation,

Plaintiff and Respondent,

-vs-

THE MONTANA RAILROAD AND PUBLIC
SERVICE COMMISSION et al.,

Defendants and Appellants.

---

Appeal from: District Court of the First Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellants:

William E. O'Leary appeared, Helena, Montana
John P. Atkins argued, Helena, Montana

For Respondent:

Bolkovatz and Romine, Helena, Montana
Walter H. Bolkovatz and William Romine argued,
Helena, Montana

---

Submitted: January 25, 1973

Decided: MAR 15 1973

Filed: MAR 15 1973

Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

Plaintiff-respondent Garrett Freightlines, Inc., hereinafter designated Garrett, is a common carrier of general commodities engaged in both intrastate and interstate commerce, operating pursuant to authority granted by the Interstate Commerce Commission and the Public Service Commission of the State of Montana.

Garrett brought this action in the district court of the first judicial district, in and for the county of Lewis and Clark, seeking a declaratory judgment that sections 8-101 and 8-127, R.C.M. 1947, are unconstitutional and for the issuance of a permanent injunction enjoining the Public Service Commission from exacting the gross revenue fee from Garrett under section 8-127, R.C.M. 1947. The Public Service Commission, hereinafter designated Commission, filed a motion to dismiss on the grounds that the complaint failed to state a claim upon which relief could be granted. The district court dismissed the complaint. On appeal to this Court the judgment was ordered vacated and the cause was remanded with directions to obtain further information pertinent to the issues. See Garrett Frt. Lines v. Mont. Ry. Comm'n, 153 Mont. 380, 457 P.2d 469.

After the filing of answers to interrogatories by both parties, the cause came to trial on September 20, 1971. After both parties submitted evidence through oral testimony and exhibits, the court, sitting without a jury, entered its findings of fact, conclusions of law and judgment in favor of plaintiff. This appeal followed.

The statutory provisions herein involved are section 8-101(h), R.C.M. 1947, which exempts from the operation of the Montana Motor Carrier Act:

> " * * * motor vehicles used in carrying property consist-
> ing of agricultural commodities (not including manufactured
> products thereof), if such motor vehicles are not used in
> carrying any other property, or passengers, for compensation,
> * * * (and) the transportation of property by motor vehicle
> within any city, town, or village with a population * * *
> of less than five hundred (500) persons, or within the
> commercial areas thereof as determined by the board * * *."

The Montana Motor Carrier Act in section 8-127, R.C.M. 1947, provides:

"In addition to all other licenses, fees and taxes imposed upon motor vehicles in this state and in consideration of the use of the highways of this state, every motor carrier holding a certificate of public convenience and necessity * * * shall * * * file with the board * * * a statement showing the gross operating revenue of such carrier for the preceding three (3) months of operation, or portion thereof, and shall pay to the board a fee of five hundred seventy-five thousandths (.575) of one (1) per cent of the amount of such gross operating revenue * * * and in the event that such carrier operates in interstate commerce, the gross operating revenue of such carrier within this state shall be deemed to be all the revenue received from business beginning and ending within this state, and a proportion based upon the proportion of the mileage within this state to the entire mileage over which the business is done of revenue on all business passing through, into or out of this state * * *." (Emphasis added).

On March 1, 1968 Garrett filed with the Commission its quarterly report of gross operating revenue, together with its check for $5,830.17, representing the amount due the State of Montana for the preceding quarter in accordance with section 8-127, R.C.M. 1947. By way of letter accompanying the gross revenue report and check, Garrett advised the Commission that such payment was being made under protest pursuant to sections 84-4501 and 84-4502, R.C.M. 1947.

Garrett has continued to remit its quarterly report of gross operating revenue to the Commission since the original protest date. Both parties stipulated on July 21, 1968:

" * * * all future payments made under protest of the gross revenue tax, hereinafter to become due and paid by Plaintiff before final determination of Plaintiff's cause of action, shall become part of, and be included in, Plaintiff's complaint dated April 29, 1968, and that it will not be necessary for Plaintiff to file a separate action for the recovery of such future payment."

In its complaint, Garrett has alleged that Chapter 1 of Title 8, R.C.M. 1947, has deprived it of due process and equal protection of the law in violation of Art. III, Sec. 27 of the Montana Constitution and the Fourteenth Amendment to the Constitution of the United States; and also, that said statutes are in violation of the Commerce Clause.

The district court made findings and conclusions to the effect that the allegations of Garrett were correct and entered judgment thereon. While

the district court dealt with many matters raised by Garrett we do not find it necessary to discuss all of them since the cause can be disposed of by deciding whether the revenue collected by the Public Service Commission under section 8-127, R.C.M. 1947, constitutes an unconstitutional levy under Article III, Sec. 27, of the Montana Constitution and the Fourteenth Amendment of the Constitution of the United States in that said levy denies Garrett uniformity of taxation, is discriminatory, confiscatory, prohibitive, arbitrary, and is a tax on the privilege of doing business.

Secondly, whether the formula used to compute the revenue due the State of Montana under section 8-127, R.C.M. 1947, is arbitrary, unreasonable, indefinite, and lacks precision.

In regard to the first issue, this Court finds that the revenue collected by the Public Service Commission under section 8-127, R.C.M. 1947, constitutes an unconstitutional levy under Article III, Sec. 27, of the Montana Constitution and the Fourteenth Amendment of the Constitution of the United States in that said levy denies Garrett uniformity of taxation, is discriminatory, confiscatory, prohibitive, arbitrary, and is a tax on the privilege of doing business.

Section 8-127, R.C.M. 1947, does not include private carriers for payment of the gross revenue tax when carrying their own commodities upon the highways of the State of Montana. Section 8-101(h), R.C.M. 1947, exempts from all provisions of the Motor Carrier Act motor vehicles used in carrying property consisting of ordinary livestock or agricultural commodities, supplies and materials for construction and maintenance of highways, supplies and materials for logging and mining operations, and for the transportation of newspapers, newspaper supplements, periodicals and magazines. This Court holds, and the district court so found, that these exemptions and exclusions deprived Garrett of the right of uniformity in taxation, discriminating against Garrett in the company's interstate operation, being arbitrary classifications, lacking any reasonable basis for determination, and being

- 4 -

unreasonably discriminating between Garrett and the exempt motor vehicles.

This Court in the case of Hayes v. Smith, 58 Mont. 306, 314, 192 P. 615, set the formula for classification as follows:

"The authority of the state to make a proper classification of property for the purpose of taxation is settled beyond controversy in this jurisdiction. (Citation omitted). But a proper classification implies that there exist real differences as between the subjects constituting the different classes, and excludes the idea of arbitrary selection."

On the subject of classification in State v. Sunburst Refining Co., 73 Mont. 68, 235 P. 428, this Court held that the classification must be reasonable, in that it must be based upon substantial distinctions which really make one class different from another. In State ex rel. Griffin v. Green, 104 Mont. 460, 67 P.2d 995, 111 A.L.R. 770, this Court held that arbitrary and unreasonable classifications are not permissible.

The record here discloses that the chain store operations with their large warehouses, which have come into being in recent years, have received the advantage of the exclusion of private carriers from paying the gross revenue tax. These business concerns have acquired their own vehicles and accomplished their own hauling without paying any tax, resulting in an unreasonable discrimination in favor of such carriers, since the plaintiff cannot be competitive in price because of the gross revenue tax.

Also the record shows that section 8-127, R.C.M. 1947 is discriminatory in that railroads haul freight into their stations by train which then must be delivered by common carrier on Montana highways. The wholly owned trucking subsidiaries of the railroads make these deliveries. There is no statute or board rule regulating the agreement between the railroads and their wholly owned trucking subsidiaries as to the charge or allocation of revenue made between the trucking subsidiary to the parent railroad. The trucking subsidiary only has to pay a gross revenue tax on the amount it charges the railroad for its services, whether such amount is fair and competitive to other common carriers or not. There being no rules or regulations or a law providing for the amount of such charges, the situation results

- 5 -

in a discrimination against Garrett, a common carrier, in favor of rail-road trucking subsidiaries who are also holders of certificates of public convenience and necessity.

Counsel for the Public Service Commission capably and extensively argue that the revenue collected under section 8-127, R.C.M. 1947, is not an unconstitutional levy under Article III, Sec. 27, of the Montana Constitution and the Fourteenth Amendment to the Constitution of the United States, in that the levy does not deny Garrett uniformity of taxation, is nondiscriminatory, is nonconfiscatory, is not prohibitive, is not arbitrary, and is not a tax on the privilege of doing business. The crux of the argument centers on the case of Rwy. Com. v. Aero Mayflower Tran., 119 Mont. 118, 131, 172 P.2d 452, Affirmed 332 U.S. 495, 92 L.Ed. 99, 68 S.Ct. 167. Therein this Court stated:

> " * * * In addition the exactions must be such as are reasonably necessary for the purposes mentioned (i.e. build-ing and maintaining highways), and must not be discrimina-tory as between state and interstate carriers. It further appears to be the established rule of the federal courts to require the interstate carrier who challenges the right of the state to impose such licenses and taxes to affirmatively show that the exactions demanded are not necessary for the purposes mentioned or are discriminatory. In other words the burden is on the carrier to show wherein the exactions are unlawful as to him."

This Court also stated:

> " * * * The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrim-ination between the parties charged with its burdens. It is enough that the state has secured a reasonably fair distribution of burdens, and that no intentional discrimin-ation has been made against nonresidents."

Relying on these two passages, this Court finds that Garrett has met the burden of showing that the levy was discriminatory. We also find that an invidious discrimination has taken place against Garrett.

Garrett's witnesses in their testimony indicate that the number of private carriers not subject to the gross revenue tax is substantial, and on the increase yearly. The witnesses further showed that Garrett is in compe-tition with its own customers. These customers are electing to become private

carriers in an alarming number of cases, and they are not subject to the gross revenue tax.

Of equal concern and of grave importance is the use that such private carriers make of the Montana highways.

Testimony of Garrett's witness and exhibits from the records of the Gross Vehicle Weight Department of the State of Montana, show that there are a total of 164,176 vehicles, including commercial vehicles, farm vehicles and loggers and livestock vehicles using Montana highways. Answer to interrogatories propounded by the plaintiff to the defendant shows that there are 17,015 vehicles issued permits from the Montana Railroad Commission. This makes a net of 147,161 commercial vehicles using the highways of the State of Montana which are exempt from paying any gross revenue tax. The size of the vehicles and the weight carried by them is comparable to the vehicles used by the plaintiff.

Garrett's Exhibit 12 is only a small, partial list of some of the known private carriers and this exhibit lists 166 tractors and 157 trailers of 26,000 pounds and up. The records of the State Department of Revenue, Motor Fuels Division, show the miles travelled by all vehicles subject to the fuel tax. From these records it is shown that the exempt vehicles and privately owned vehicles travel millions of miles on the highways of the State of Montana. A few such carriers' travel is as follows: Associated Food Stores, 640,550 miles; Buttrey's Food, 918,969 miles; Beatrice Foods, 295,661 miles; Continental Oil, 872,657 miles; Safeway Stores, 1,853,779 miles; Petrolane Supply, 343,604 miles; American Oil Company, 1,553,207 miles; Ryan Grocery, 190,730 miles; and Royal Logging, 379,817 miles.

It cannot be denied that the exempt vehicles and private carriers make as much and as arduous use of the highways as do the plaintiff and similar carriers. There is no distinction or just classification of the exempt carriers and private carriers as they are all engaged in business for a profit and use the highways of the State of Montana in such business. It appears that the exemptions and the exclusion of private carriers is a

- 7 -

result of successful lobbying and not because of any real classification distinctions. To classify has been defined as "To group or segregate in classes which have systematic relations." (Webster's New Collegiate Dictionary, Second Edition). From such definition the exempt vehicles and private carriers seem to be excluded on an arbitrary basis rather than on a classification of systematic relations.

The legislature in its 1969 session added to the exemptions the transportation of newspapers, newspaper supplements, periodicals or magazines, or those tow trucks and wreckers designated exclusively in towing abandoned, wrecked or disabled vehicles, and ambulances. Tow trucks and ambulances appear to have a valid classification as they are for the benefit of the public and usually used in emergency situations. However, the exemption of newspapers and supplements again appears to be arbitrary. The legislature in 1971 passed a new section providing the exemption for the transportation of livestock by motor carrier by a bona fide farmer or rancher or raiser of livestock in his own vehicles, or when such farmer or rancher or raiser provides transportation for the livestock of another farmer, rancher or raiser of livestock between farm and farm, ranch and ranch, pasture and pasture, or to a point. All of such activities are similar to those of Garrett, a business for profit using the highways of the State of Montana.

All this goes to show the vast difference in fact situation here from that in Peter Kiewit Sons' Co. v. State Board of Equalization, ____ Mont.____, 505 P.2d 102, 30 St.Rep. 32. In that case a complaint was raised as to the public contractors' license act being unconstitutional because the levy was not uniform and was discriminatory. We there held that since it appeared that all public contractors had to pay the tax, that all members of the class were treated alike. Under the facts there we also held that a distinction between public and private contractors was not arbitrary and capricious; it being clear from the record that the public contractors' license act was intended to operate as a revenue enforcing

measure as pointed out in the opinion and a like situation did not appear as to private contractors.

The second issue is whether the formula used to compute the revenue due the State of Montana under section 8-127, R.C.M. 1947, is arbitrary, unreasonable, indefinite and lacks precision. The formula in question is:

Intrastate: .575 of one per cent (1%) of gross operating revenue, (G.O.R. x .00575 = amount due)

Interstate: .575 of one per cent (1%) of gross operating revenue. Gross operating revenue is defined as, "A proportion based upon the proportion of the mileage within this state to the entire mileage over which the business is done * * *."

$$\frac{\text{Montana miles}}{\text{Total miles}} \times \text{total gross revenue} \times .00575 = \text{amount due})$$

Garrett, under the provisions of this formula and section 8-127, R.C.M. 1947, must report to the Railroad Commission the gross operating revenue of such carrier and pay a tax thereon. No provision exists in this statute, nor does the Commission provide through rules and regulations, for deductions of items included in the gross revenue that have no relation to the use of the highway by Garrett. These items include the loading and unloading costs, such items arising outside the State of Montana, intercity pickup and delivery charges, many outside the State of Montana, cost of intercity pickup and delivery charges, collect on delivery fees, storage charges, return delivery charges, and vehicle detention or demurrage charges.

None of these charges, by any formula or reasoning, can be said to relate to the use of the highways of the State of Montana by Garrett, and they are included in the gross revenue for the purpose of tax determination. No provision of the statute or regulations of the Railroad Commission provide an adjustment where Garrett has made a refund to a shipper. The taxes are paid upon the amount originally reported, and no credit is allowed for a refund.

A tax having to be paid upon items which have no relationship to

the use of Montana highways is a tax on interstate commerce, a burden on interstate commerce and a violation of the Commerce Clause of the United States Constitution.

The exaction imposed by section 8-127, R.C.M. 1947, not being related to the use of the highway, is a tax only on the income producing ability of a vehicle, it is confiscatory, and the statute does not take into consideration Garrett's profit or loss from the trucking operations. Garrett, according to the record, expends the sum of $1.24 for each dollar of revenue produced in intrastate operation. Obviously if the formula for computing tax eliminated those items which have no relationship to the revenue producing ability of the vehicle as such, the loss ratio in the State of Montana of Garrett's intrastate operation would be less.

We hold that the gross revenue formula has no relationship to the use made by Garrett's vehicles in travelling the highways of the State of Montana and the tax varies according to the volume of interstate business. The Montana Supreme Court in the Rwy. Com. v. Aero Mayflower Tran., 119 Mont. 118, 172 P.2d 452, stated:

> "The company contends that in fixing the exactions imposed upon it, no distinction is made between large and small vehicles, or heavy and light loads, nor the number of miles travelled over the highways. There is merit in this contention. The heavier the load and the greater the number of miles travelled the greater the wear and tear on the roadway. It is obvious that the tax set up in section 3847.27 (section 8-127, R.C.M. 1947) was for the purpose of meeting this situation. A short trip and a light load would bring the carrier but little revenue whereas the heavier traffic and longer hauls would produce more revenue and require more taxes. * * *" (Emphasis supplied).

Garrett's testimony of witnesses and exhibits has shown that heavy loads and long hauls do not always produce more revenue. Plaintiff's Exhibit 1 depicting an actual transaction, shows two shipments travelling the same miles in Montana with similar commodities and similar weights but travelled different distances outside of the State of Montana. Load A produced more revenue but paid less tax than Load B which produced less revenue and paid more tax. This resulted from the number of miles travelled by Load A outside the State of Montana in an interstate shipment. This

- 10 -

exhibit and testimony also confirms that the amount of tax varies in proportion to the volume of interstate business and is a burden on interstate commerce.

Exhibit 2 demonstrates that two shipments travelling the same miles in Montana, but having different weights and different commodities results in the heavier load by 11,000 pounds producing less revenue than the lighter loaded vehicle. The one with the heavier load paid less tax than the one with the lighter load. This exhibit shows that the weight of the load does not determine the amount of the tax to be paid since the heavier load had a lower revenue rate than the lighter load.

Exhibit 3 depicts two vehicles carrying approximately the same weight, same Montana miles, but different products, one vehicle producing a revenue of $347.60 and the other a revenue of $172.80, resulting in a tax on one vehicle being less than the other. This again was because of the higher rate on one commodity than another. The tax was not related to the use of the highway. There were other exhibits to like effect, and it was apparent from them that trucks with heavy loads do not always produce more revenue than trucks with lighter loads. A major factor is the rate of the commodity being shipped. Garrett's expert witness testified as to the important factors in determining a rate. The density of a product being shipped is more important because of the limited cubic space and weight carrying capacity of the carrier trailers operating over the highways. The less dense products would have a higher rate than the higher density products.

From Garrett's exhibits and testimony of its witnesses, it appears that a proper conclusion is that section 8-127, R.C.M. 1947, and the tax exaction therein, is based upon the income producing ability of the vehicle in interstate commerce rather than the use of the highway. The inequities are obvious and numerous and the tax not being for the use of the highway must be for the privilege of doing business, placing a burden on interstate commerce contrary to the Commerce Clause of the United States Constitution. To be valid the tax must be compensation reasonably related to the use made

- 11 -

of the highways of the state. It appears that under the present act the amount of taxes is not dependent upon such use. It does not rise with an increase in mileage travelled or weight of the vehicle, but only upon the income producing ability of the vehicle. The tax does not relate to degree of wear and tear incident to the use by the motor vehicles of the highway of different sizes and weights, except as to the income producing ability. The tax is proportioned solely to the earning capacity of the vehicle and not to the use of the highway, and thus has no reasonable relation. It is the income that is taxed, and Garrett's exhibits show that this results in very grave inequities in the computation of the tax.

As we have noted herein the revenue collected under section 8-127, R.C.M. 1947, is an unconstitutional levy under Article III, Sec. 27, of the Montana Constitution and the Fourteenth Amendment to the United States Constitution; and, further, the formula used to compute the revenue due thereunder is arbitrary, unreasonable, indefinite and lacks precision.

As to both situations heretofore shown the revenue collected is not in consideration of the use of the highways but rather a tax upon the privilege of doing business.

For these reasons no necessity exists to discuss other issues raised on this appeal and the judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

Associate Justices

Mr. Justice Gene B. Daly and Mr. Justice John Conway Harrison dissenting:

We respectfully dissent, having in mind the burden that must be carried by a plaintiff when he launches a constitutional attack on a statute enacted by the Montana legislature as approved in Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, 220, 293 P.294, in this language:

> "'In the case of statutes passed by the legislative assembly and assailed as unconstitutional, the question is not whether it is possible to condemn, but whether it is possible to uphold. We stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, beyond reasonable doubt.'"

The problems here were before this Court, in part, in this Court's ruling in Peter Kiewit Sons' Co. v. State Board of Equalization, ____Mont. _____, 505 P.2d 102, 30 St.Rep. 32, decided January 10, 1973. The central issue in Kiewit was tax discrimination based on classification between public and private contractors. The same problem arises in the instant case between public motor carriers and private motor carriers. The reasons and purposes for the tax may differ but the underlying problem of an alleged unconstitutional classification resulting in tax discrimination remains the same.

In Kiewit, there was an in depth discussion including most of the Montana and federal citations on the question of classification for taxing purposes between contractors doing public work and contractors doing private work. There the court said, quoting with approval language from State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 403 P.2d 635:

> "Since that was the same point raised in Schultz-Lindsay, a review of that decision will give us a view of Montana law on the issue of tax discrimination. There, we stated that the legislature may impose a license tax on certain occupations and not on others, as long as 'arbitrary and unreasonable classifications' are not permitted. Schultz-Lindsay, p. 398.
>
> "In Schultz-Lindsay at p. 390, the Court citing State v. Sunburst Refining Co., 73 Mont. 68, 235 P. 428, stated that in making such classifications:

- 13 -

> "'Equal protection of the law is seldom, if ever,
> obtained; and because of the very frailty of human
> agencies, the authorities all recognize the right of
> the legislative branch of government to make reason-
> able classifications of subjects for property or
> occupation taxes * * * and if the classification is
> reasonable, and if all of the subjects within a given
> class are accorded the same treatment, the legislation
> cannot be said to deny to anyone within such class
> the equal protection of the law, even though the
> burden imposed upon him may be more onerous than that
> imposed upon a member of another class. [Citing cases]
> But to justify such discriminatory legislation, and avoid
> the condemnation of the Fourteenth Amendment to the
> federal Constitution, the classification must be reason-
> able -- that is, must be based upon substantial distinc-
> tions which really make one class different from another.
> [Citing case] (Emphasis ours.)'

"Later in the same opinion at p. 392, the Court said:

> "'The constitutional safeguard against unjust discrimin-
> ation in legislation of this type is well defined by the
> decisions everywhere, and that is, that the classification
> must be reasonable, not arbitrary, and must rest upon
> some ground of difference having a fair and substantial
> relation to the object of the legislation, so that all
> persons similarly circumstanced shall be treated alike.
> Mills v. State Board of Equalization, 97 Mont. 13, 31,
> 33 P.2d 563.' (Emphasis ours.)"

Applying then, the above language, the fact that the operation of

section 8-127, R.C.M. 1947, creates the class motor carriers for hire hauling

nonexempt commodities over Montana highways, does not per se render the

statute unconstitutional. If the class is based on a substantial distinction

that really makes one class different from another, as set forth above, the

classification is reasonable and constitutional. It would appear that there

is as sound, if not sounder, factual basis for the distinction between public

carriers for hire and private carriers not for hire than between public

and private contractors.

The exempt commodities contained in section 8-101, R.C.M. 1947,

merely conform to those exemptions granted to interstate carriers for hire

under the Interstate Commerce Act, Part II, Motor Carriers, 49 USCA § 303(b),

and are thus preempted from state regulation when moving in interstate

commerce. Baltimore Ship. & Reciv. Ass'n v. Public Util. Com'n of Cal., 268

F.Supp. 836, (DC Cal. 1967), affirmed 389 U.S. 583, 88 S.Ct. 694, 19 L ed 2d

783.

Plaintiff-respondent Garrett has presented a convincing case of

"onerous" burden on it when compared to private haulers such as Safeway and

Buttreys etc., all private and outside the classification. This is probably

true, but our case law above cited distinctly and squarely states that this

makes no difference so long as those within the given class are accorded the same treatment. So, this argument would be irrelevant when directed to the matter of constitutionality, but not so if directed to the legislature.

This leaves the matter of the railroad and its subsidiary carriers to be considered. The subsidiary carrier of the railroad being within the class under consideration. The argument that the subsidiary carrier for hire has an arrangement with the railroad to "fix" its <u>rates</u> and thus pay less tax on the same formula must fail for the obvious reason that section 8-127, R.C.M. 1947, which authorizes the tax or fee, does not authorize or contemplate this kind of situation and if the parties complained of have found a "loophole" through "rate" fixing, then this is a matter to be brought to the attention of the proper Montana authority. It has no bearing on the constitutionality of section 8-127, R.C.M. 1947.

We believe whether the burden imposed by the statute is "discriminatory" or "confiscatory" was decided by this Court in Rwy. Com. v.Aero Mayflower Transit Co., 119 Mont. 118, 136, 172 P.2d 452, cited in the majority opinion, when the Court citing from Hilger v. Moore, 56 Mont. 146, 182 P. 477 and Travelers' Ins. Co. v. Connecticut, 185 U.S. 364, 22 S.Ct. 673, 46 L ed 949, said:

> " * * * the validity of this legislation does not depend on the question whether the courts may see some other form of assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens."

<u>Aero Mayflower</u> was affirmed by the United States Supreme Court, 332 U.S. 495, 502, 68 S.Ct. 167, 92 L ed 99. There that court spoke concerning the statute as "prohibitive" in this language:

> " * * * it is not material to the validity of either tax that the state also imposes and collects the vehicle registration and license fee and the gallonage tax on gasoline purchased in Montana.

" * * *

"'Common carriers for hire, who make the highways
their place of business, may properly be charged an extra
tax for such use.' Clark v. Poor, supra (274 U.S. at 577,
71 L ed 1200, 47 S.Ct. 702)."

The "arbitrary" feature of this kind of tax has been treated in
other jurisdictions. In New Jersey a flat rate tax of 1/2 cent per mile
was held constitutional in Safeway Trails, Inc., v. Furman, 41 N.J. 467,
197 A.2d 366, 376, citing from Capitol Greyhound Lines v. Brice, 399 U.S.
542, 70 S.Ct. 806, 94 L ed 1053:

"A mileage tax is normally considered to be prima facie
compensatory because it is directly proportional to
road use. But a formula not related to road use will be
upheld unless the challenger shows that the result of
the tax is an unreasonable burden on interstate carriers."

Garrett's claim that this is a "tax on the privilege of doing busi-
ness" was again directly answered in Aero Mayflower by pointing out that
the act itself provides "in consideration of the use of the highways of
this state" motor carriers for hire will be required to pay a gross revenue
fee.

The challenge to the tax formula itself as being "arbitrary", "un-
reasonable", "indefinite" and "lacks precision" does not square with the
record or decided cases in this area. Garrett's comptroller, Mr. Hawkins,
testified on cross-examination that he had never had any trouble applying
the formula. By Garrett's own admission, it would seem the formula is
neither "indefinite" nor does it "lack precision".

As to the issue of section 8-127, R.C.M. 1947, being "unreasonable",
the logic on that point is difficult to follow. It is claimed that the
tax "bears no relationship to the use of Montana highways". An examination
of the formula itself seems to make the relationship between the two obvious.

In the New York case of Mid-States Freight Lines, Inc., v. Bates,
200 Misc. 885, 111 N.Y.S.2d 568, 573, cert.den. 345 U.S. 908, 97 L ed 1344, the
court upheld the validity of a taxing formula challenged as not being truly
compensatory for road use, stating:

- 16 -

"The formula employed by a state to exact reasonable compensation from carriers for the privilege of using its highways is not of crucial importance. The court has recognized the practicable impossibility of devising a formula which will result in exact or mathematical precision in equating the tax to the privilege conferred. Rough approximation, rather than precision will suffice and if the tax is not unreasonable it will be upheld."

It is therefore, our opinion that the burden to be carried by plaintiff-respondent in a successful constitutional challenge has not been met and the judgment of the trial court should be reversed.

Associate Justices