No. 13221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

SECURITY BANK AND TRUST COMPANY et al.,

Plaintiff and Respondent,

-vs-

HOLLIS G. CONNORS, as Montana State Treasurer,
and KEITH L. COLBO, as Director of Montana
Department of Revenue,

Defendants and Appellants,

FIRST NATIONAL BANK AND TRUST COMPANY OF HELENA et al.,

Intervenor,

-vs-

SECURITY BANK AND TRUST COMPANY, a Montana banking
Corporation, Hollis G. Connors, as Montana State Treasurer,
and Keith L. Colbo as Director of Montana Department
of Revenue,

Defendants.

---

Appeal from:   District Court of the First Judicial District,
        Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellants:
        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        Joseph R. Massman argued, Helena, Montana

    For Respondent:
        Gough, Booth, Shanahan and Johnson, Helena, Montana
        Ronald F. Waterman argued and Ward A. Shanahan
        appeared, Helena, Montana
        Morrow, Nash and Sedivy, Bozeman, Montana
        Edmund P. Sedivy argued, Bozeman, Montana
        Towe, Neely and Ball, Billings, Montana

---

Submitted: April 21, 1976
Decided:

Filed:

Thomas J. Kearney
                                Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants appeal through the Department of Revenue from a summary judgment in the district court ordering the state treasurer to refund to plaintiff Security Bank and Trust Company the corporation license tax for the year 1972 paid by plaintiff under protest. Appeal is also taken from the district court's decree on behalf of intervenor First National Bank and Trust Company of Helena, that the Department may not levy and collect a corporation license tax against intervenor, a federally chartered national bank, for the year 1972.

The controversy arises as a result of the passage by the United States Congress in 1969 and later, of amendments to the state taxation of national banks provision, United States Revised Statutes §5219, 12 U.S.C. §548, and certain Montana legislative enactments pursuant thereto. The only issue is whether the state of Montana is permitted to levy and collect a corporation license tax from either state chartered or federally chartered banks doing business in Montana for the tax year beginning January 1, 1972.

The facts upon which the district court based its summary judgment were stipulated in two separate documents between the parties, and are summarized herein.

Security Bank is a Montana banking corporation duly authorized and licensed under Montana law to engage in commercial banking, with its principal office in Bozeman, Montana. Defendant and appellant Connors was the treasurer of Montana; defendant and appellant Colbo was the director of the Department of Revenue.

Security Bank paid its corporation license tax for the year 1972, under protest, to defendant state treasurer in the sum of $31,752.38; the payment was received by the Department and deposited with defendant treasurer. Security Bank filed a complaint to recover the payment in the district court within the time prescribed by law.

In the immediate bank trade territory of Bozeman, there were at the time of suit three named and several other national banks with banking charters from the United States government under the National Banking Act; all these banks were in competition with Security Bank.

The tax paid by Security Bank was a tax levied by the state of Montana on all nonexempt corporations licensed to do business in Montana under section 84-1501 et seq., R.C.M. 1947; and for the year 1972 the state of Montana did not require any national bank to pay a tax based upon its net income as required by section 84-1501 et seq., R.C.M. 1947, or any similar statute, and no such tax was paid by any national bank. The tax paid by Security Bank was computed on the basis of its net income and imposed on Security Bank under penalty of law.

The power of the state of Montana to tax national banks located in Montana is set forth in 12 U.S.C. §548, as amended by Public Law 91-156. For the year 1972, the state of Montana did authorize the levy and assessment of a tax on national banks by assessing shares of stock of national banks under section 84-4601 et seq., R.C. M. 1947. In the same year the state taxed state chartered banks by assessing shares of stock of state banks under the same statutory authority. The method of assessment of shares of stock and the rate of tax was identical for national and state banks.

The national banks in the trade area of Bozeman provided substantially the same commercial banking services and functions as provided by Security Bank and other state banks in the Bozeman trade area. However, national banks are regulated by federal law while state banks are regulated by state law. The different sources of their charters do not affect their classification.

Intervenor First National is a national banking association in commercial banking, located in Helena, Montana. First National paid a tax on shares of stock for the years 1971 and 1972 as required by Montana law; but First National was not required by the Department

- 3 -

to, nor did it pay, any corporation license tax to the treasurer of Montana for the same years, as none had been levied.

Before detailing the proceedings in the district court, a review of the sequence and substance of the pertinent statutory enactments is in order.

Prior to 1969, 12 U.S.C. §548, provided in pertinent part to this appeal:

> "§548.  State Taxation
>
> "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of the national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:
>
> "1.(a)  The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others * * *."

This section will hereinafter be referred to as the "old §548".

Prior to 1969 the state of Montana elected the alternative of taxing the shares of national banks in Montana.  The state also taxed the shares of state banks and, until 1967, additionally imposed the corporation license tax on state banks only.

Uniformity of taxation between state and national banks was established in 1967 by the enactment of section 84-1501.4, R.C.M. 1947:

> "State banks organized under the Montana Bank Act shall not be required to pay the Montana corporation license tax provided for under chapter 15 of title 84 of the Revised Codes of Montana, 1947, until and unless the said tax is required to be paid by national banks organized under the laws of the United States."

In 1969 Congress undertook the abolition of national bank state tax immunity.  Public Law 91-156 added this section to old §548, as a temporary amendment:

> "5. (a)  In addition to the other methods of taxation authorized by the foregoing provisions of this section and subject to the limitations and restrictions specifically set forth in such provisions, a State or political

- 4 -

> subdivision thereof may impose any tax which is
> imposed generally on a non-discriminatory basis
> throughout the jurisdiction of such State or
> political subdivision (other than a tax on in-
> tangible personal property) on a national bank
> having its principal office within such State in the
> same manner and to the same extent as such tax is
> imposed on a bank organized and existing under the
> laws of such State."

This provision is hereinafter referred to as the "temporary amendment".

Public Law 91-156 also contained a "permanent amendment" to take effect January 1, 1972, at which time the entire old §548 and the temporary amendment were repealed automatically. The permanent amendment now in effect and hereinafter referred to as the "new §548", states in its entirety:

> "For the purpose of any tax law enacted under
> authority of the United States or any State, a
> national bank shall be treated as a bank organized
> and existing under the laws of the State or other
> jurisdiction within which its principal office is
> located."

Pursuant to this new taxing authority granted by Congress to the states under the temporary amendment and new §548, the Montana legislature in 1971, enacted sections 84-1501.6 and 84.1501.7, R.C.M. 1947:

> "84-1501.6. State and national banks subject to tax.
> Effective with taxable years beginning on or after
> January 1, 1971, every bank organized under the laws of
> the state of Montana or of any other state and every
> national bank organized under the laws of the United
> States are subject to the Montana corporation license
> tax provided for under Title 84, chapter 15, R.C.M. 1947."

> "84-1501.7. Effective dates. For the taxable year
> beginning on and after January 1, 1971, section 1
> [84-1501.6] of this act is effecive in accordance with
> Public Law 91-156, section 1 (12 U.S.C. 548(5).) For
> taxable years beginning on and after January 1, 1972,
> section 1 [84-1501.6] of this act is effective in accord-
> ance with Public Law 91-156, section 2 (12 U.S.C. 548)."

An additional section of this 1971 act repealed section 84-1501.4, R.C.M. 1947, as state bank immunity from the corporation license tax was no longer necessary when national banks were subject to the same tax.

Finally, about ten months after the enactment by the Montana legislature of the above act, the Congress amended Public Law 91-156 with Public Law 92-213 which extended the life of the temporary amendment and old §548, and delayed the effective date of new §548 for one year, until January 1, 1973.

With the foregoing background in mind, Security Bank sued for refund of its 1972 corporation license tax on the ground it was an unconstitutional deprivation of property to impose the tax on state banks but not on national banks. Originally, the only parties to this action were Security Bank, and the defendants represented by the Department. On the first stipulation of facts the district court entered conclusions of law on November 19, 1974, which essentially held: (1) the Department was authorized by section 84-1501.6, R.C.M. 1947, and old §548, 12 U.S.C. with the temporary amendment, to subject national banks to the corporation license tax in 1972, therefore the collection of a corporation license tax from state banks was not in and of itself violative of state or federal constitutional rights of Security Bank; (2) however, if the Department failed to either refund to Security Bank its 1972 corporation license tax or assess and collect said tax as a deficiency from national banks, then the payment of the tax by Security Bank would be a violation of its due process rights under Art. III, §§ 3 and 27, 1889 Montana Constitution and the Fourteenth Amendment, United States Constitution.

Shortly thereafter, First National was granted leave to intervene. The district court vacated its November 19 ruling. First National's intervention was precipitated by the expressed intention of the Department to comply with the November 19 ruling by collecting a deficiency corporation license tax for 1972 from national banks in Montana.

The issue was submitted on briefs, and on September 22, 1975, the district court entered summary judgment ordering defendant Montana treasurer to refund to Security Bank the 1972 corporation license

tax paid under protest. In its opinion the district court held, contrary to its November 19 conclusions, the Department could not levy and collect a corporation license tax from either state or federally chartered banks in 1972. On October 14, 1975, the district court entered judgment against defendants, ordered the Montana state treasurer to refund to Security Bank $31,752.38, and decreed that defendants have no authority to impose upon or collect a corporation license tax from intervenor First National for any tax year prior to January 1, 1973.

The issues on appeal are:

1. Did the district court err in ruling that the state, through the Department of Revenue, cannot levy and collect a corporation license tax from federally chartered banks doing business in Montana for the tax year 1972?

2. Did the district court err in ruling that the state, through the Department of Revenue, cannot levy and collect a corporation license tax from state chartered banks for the tax year 1972?

Resolution of the first issue depends upon the precise meaning of old §548 as amended by the temporary amendment and Public Law 92-213. The parties properly stipulated that state taxation of national banks is controlled by Congressional authorization, i.e., 12 U.S.C. §548 in its various forms. See: First Agricultural National Bank v. State Tax Commissioner, 392 U.S. 339, 88 S.Ct. 2173, 20 L ed 2d 1138. At the outset, we note the rules of statutory construction long adhered to by this Court. In construing a statute, the intent of the legislature is controlling. Such intention must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the Court to construe. The function of the Court is simply to ascertain and declare what in terms or in substance is contained in the statute

and not insert what has been omitted. Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660, and cases cited therein; Sections 93-401-15 and 93-401-16, R.C.M. 1947.

The first paragraph and subparagraph 1.(a) of old §548, in effect during 1972, provides for four different methods of permitted taxation of national banks by the states, and unequivocably state the "* * * imposition by any State of any one of the above four forms of taxation shall be in lieu of the others * * *." (Emphasis supplied.) The temporary amendment reemphasized this language by stating that the temporary amendment is "subject to the limitations and restrictions specifically set forth" in the existing sections. Thus, in 1972, the states could not impose on national banks any more that one of the four enumerated methods of taxation. This position was, in fact, taken by the Department itself from 1971 until First National intervened in this litigation in November 1974. CCH State Tax Reporter --- Montana, Paragraph 200-033, p. 10,035.

It is undisputed that First National paid, and the Department collected, a tax upon shares of stock of First National for 1972. Such is one of the four methods of taxation permitted by old §548. It is also plain the corporation license tax is a tax on net income (section 84-1501,R.C.M. 1947), another one of the four permitted methods of taxation. It follows that having collected under one of the methods of taxation, the Department is prohibited by old §548 from imposing a corporation license tax on national banks before 1973, when new §548 became effective.

Therefore, we affirm the district court on the first issue. The district judge properly rejected the Department's attempt to seek statutory construction through the use of extrinsix sources, as the words of the statute in question and its amendments speak for themselves. We are also not impressed with the Department's strained distinction between old §548, subparagraph 1.(a) as a "condition" and the remaining paragraphs as "limitations and restrictions".

The second issue involves the corporation license tax paid by Security Bank under protest in 1972. It appears this dispute arises because of the fortuitous circumstance that Congress enacted Public Law 92-213 (making new §548 effective January 1, 1973) after the Montana legislature enacted sections 84-1501.6 and 84-1501.7, R.C.M. 1947, in reliance on the timetable set out in the temporary amendment, Public Law 91-156 (making new §548 effective January 1, 1972).

In 1967, section 84-1501.4 was enacted to provide that state and national banks be taxed equally with respect to the corporation license tax. This was in recognition of the fact that state and national banks in Montana perform virtually the same functions and services and that dual taxation of state banks in the face of national bank immunity from such dual taxation placed state banks in an inferior competitive position. This parity provision was repealed by the 1971 enactment permitting corporation license taxation of national banks because parity was thought to be provided by Congress. However, when Congress extended the life of the temporary amendment and old §548, the Department continued to levy the tax on shares of all banks and felt it was not authorized to impose the corporation license tax on national banks. By imposing the corporation license tax on state banks only, the Department was doing what section 84-1501.4 prohibited from 1967 to its repeal. The question then is: Was the corporation license taxation of state banks in 1972 permissible? We hold that it was not.

Security Bank's principal argument is that such taxation violates due process rights guaranteed under Art.III, §§ 3 and 7, 1889 Montana Constitution, because the imposition of the tax on it in 1972 was not uniform, was discriminatory and was based upon an arbitrary classification. Security Bank relies on Garrett Freightlines, Inc. v. The Montana R.R.Comm'n, 161 Mont. 482, 507 P.2d 1040. However, the issue can be decided on nonconstitutional grounds. Taylor v. Taylor, ____Mont.____, 537 P.2d 483, 32 St.Rep.575; Montana State

University v. Ransier, _____Mont._____, 536 P.2d 187, 32 St.Rep. 569, and cases cited therein.

The district court held that because the Department decided in 1971 that it could not enforce collection of a corporation license tax from national banks in Montana during the life of the temporary amendment, it had invalidated section 84-1501.6 insofar as it applies to national banks; and because section 84-1501.6 contains no savings clause, the invalidation of one portion destroys the whole. In light of the legislative policy expressed in repealed section 84-1501.4, the basis of its repeal, the continued legislative policy of taxing state and national banks equally throughout the period of 1967 to the present, and the unavoidable confusion which resulted from the Congressional postponement of the effective date of new §548 to 1973, we agree with the district court that when the state, through the Department, prohibited the corporation license taxation of national banks, it was similarly prohibited from collecting the tax from state chartered banks. In other words, it is obvious from the sequence of events that the legislature did not intend to authorize the Department to exact the corporation license tax from state banks and simultaneously return to the policy of national bank immunity from the same tax.

We are mindful of the trend in favor of implied separability as pointed out by the Department. State ex rel. Evans v. Fire Department Relief Ass'n, 138 Mont. 172, 355 P.2d 670. However, the facts of this case compel the conclusion, in the absence of a savings clause, the Department cannot treat section 84-1501.6 as partially invalid and partially valid. The statement of this Court in State v. Holmes, 100 Mont. 256, 291, 47 P.2d 624, particularly applies:

> "* * * In the absence of such a [savings] provision the presumption is against the mutilation of a statute, and that the legislature would not have enacted it except in its entirety. * * *."

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices

_____
Hon. Robert Nelson, District
Judge, sitting for Chief Justice
James T. Harrison.

- 11 -