No. 80-36

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

SHARON MACKIN, Guardian ad Litem
of MICHAEL TIMMER, a minor,

Plaintiff and Appellant,

-vs-

STATE OF MONTANA,

Defendant and Respondent.

---

Appeal from:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Keller, Reynolds, Drake, Sternhagen & Johnson,
Helena, Montana
Keith Keller argued, Helena, Montana

For Respondent:

J. Michael Young, Dept. of Administration, Helena,
Montana (argued)
Carter N. Picotte, Helena, Montana— *Amicus Curiae*
Robert Cummins, argued, Helena, Montana

---

Submitted:  September 12, 1980

Decided:  DEC 19 1980

Filed:  DEC 19 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff-appellant Sharon Mackin brought this tort action against the State in the Lewis and Clark County District Court on behalf of her minor son Michael Timmer. The trial court granted defendant's motion for partial summary judgment based upon section 2-9-104, MCA, dealing with sovereign immunity. The plaintiff appeals.

Michael Timmer, plaintiff's 12-year-old son, and some friends were playing in an open field at Fort Harrison near Helena, Montana, on August 15, 1978. The field was used as a small arms firing range by the Montana National Guard. While playing there, Michael allegedly picked up a practice grenade which had failed to explode when fired from a 40 millimeter grenade launcher. The grenade later exploded, injuring Michael's feet with shrapnel, burns and impaction of powder.

A tort complaint was filed by Sharon Mackin on behalf of her son against the State of Montana on February 27, 1979. The plaintiff's amended statement of the claim specifies the following damages:

1. Special Damages

| | |
|---|---|
| Shodair Hospital | $ 725.75 |
| Helena Radiological Assoc. | 47.00 |
| Dale Johnson, M.D. | 89.00 |
| Children's Clinic | 104.00 |
| Estimated future med. expenses | 1,000.00 |
| | $1,965.75 |

2. Loss of earning capacity    $5,000.00

3. General damage—pain & suffering
   and disfigurement    $93,000.00

The State pleaded several affirmative defenses. Its fourth affirmative defense asserts that section 2-9-104, MCA, precludes recovery of noneconomic damages under the sovereign

-2-

immunity doctrine. Under this affirmative defense, it was alleged that the claimed "general damages" ($93,000 under the amended claim) constitute noneconomic damages since no permanent disabling injuries resulted from the accident.

The plaintiff moved for summary judgment on the issue of sovereign immunity on the grounds that section 2-9-104, MCA, is unconstitutional and that the State has waived its right to assert the defense. The State then moved for partial summary judgment with regard to plaintiff's claim for pain and suffering and disfigurement, contending that section 2-9-104, MCA, bars recovery.

We set forth here in full, the provisions of section 2-9-104, MCA:

> "Limitation on governmental liability for damages in tort--petition for relief in excess of limits. (1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for:
>
> "(a) noneconomic damages; or
>
> "(b) economic damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $300,000 for each claimant and $1 million for each occurrence.
>
> "(2) The legislature or the governing body of a county, municipality, taxing district, or other political subdivision of the state may, in its sole discretion, authorize payments for noneconomic damages or economic damages in excess of the sum authorized in subsection (1)(b) of this section, or both, upon petition of plaintiff following a final judgment. No insurer is liable for such noneconomic damages or excess economic damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of the limitation stated in this section or specifically agrees to provide coverage for noneconomic damages, in which case the insurer may not claim the benefits of the limitation specifically waived." (Emphasis added.)

For the purposes of section 2-9-104, noneconomic damages and economic damages are defined in section 2-9-101(2), MCA.

Plaintiff argued at the District Court hearing that the

-3-

statute is unconstitutional under 1972 Mont. Const., Art. II,
§18, as amended by the voters in 1974, and which now provides:

> "State subject to suit. The state, counties,
> cities, towns, and all other local governmental
> entitles shall have no immunity from suit for
> injury to a person or property, except as may
> be specifically provided by law by a 2/3 vote of
> each house of the legislature."

The District Court filed a memorandum opinion and order
on December 31, 1979. The order denied plaintiff's motion
for summary judgment and granted the State's motion for
partial summary judgment on plaintiff's claim for damages.
The District Court also directed the entry of a final judgment
in favor of the State against all claims for "noneconomic"
damages. The court found that there were no just reasons
for delay and certified its reasons therefore pursuant to
Rule 54(b), M.R.Civ.P. As a result, the order is appealable
within Rule 1, M.R.App.Civ.P., although the judgment encompasses
fewer than all the claims.

The plaintiff raises issues on appeal that section 2-9-
104, MCA, is unconstitutional, that it is an invalid attempt to
reinstate immunity, and that the State, by the adoption of
section 2-9-201, et seq., MCA, providing for self insurance,
is precluded from raising the defense of sovereign immunity.
The State responds that the provisions of the 1972 Mont.
Const., Art. II, §18, as amended, do not restrict the legislature
from imposing such conditions or limitations as are set out in
section 2-9-104(1).

We do not reach the constitutional or other contentions
raised by the parties in this case. It is clear from the
provisions of section 2-9-104(2), that the entry in this
case of a summary judgment against the plaintiff on certain
of her claimed damages was premature. An analysis of the
statute and its background is necessary in order to explain
our reasons.

In 1972, the members of the Montana Constitutional Convention
adopted Art. II, §18, which abolished governmental immunity from

-4-

suit for injury to a person or property without qualification. That section of Art. II was amended by the voters in the general election of 1974 by adding to the provision "except as may be specifically provided by law by a 2/3 vote of each house of the legislature."

We note parenthetically that the proper term to describe the immunity now provided in 1972 Mont. Const., Art. II, §18, as amended, is "governmental immunity." Since the constitutional provision extends to "counties, cities, towns, and all other local government entities", it is improper to describe their immunity as "sovereign." Only the state has "sovereign immunity", which is as old as the common law, and thought to be inherent in the nature of sovereignty. See Nevada v. Hall (1979), 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416, reh.den. 441 U.S. 917. Governmental, or municipal immunity, derives from Russell v. The Men of Devon (1788), 2 Term.Rep. 667, 100 Eng.Rep. 359, and is therefore based on court-made law. See Worthington v. State (Wyo. 1979), 598 P.2d 796. It is to be noted with approval that section 2-9-104, the section with which we are concerned here, speaks of "limitation on governmental liability" with no reference to the term "sovereign immunity."

However, the reference in the caption of section 2-9-104, "limitation on governmental liability" sets the stage for our discussion here. When the provisions of section 2-9-104, are read in juxtaposition to the provisions of 1972 Mont. Const., Art. II, §18 (as amended), this question is immediately raised: Did the legislature in adopting section 2-9-104 reinstate a limited governmental immunity, or did it merely limit the remedy recoverable against a governmental unit?

The District Court recognized the nuance contained in that question. In determining that section 2-9-104 was constitutionally amenable under 1972 Mont. Const., Art. II, §18 (as amended), the District Court said this:

". . . I can only conclude that the legislature subsequently has the same power and authority to reinstate immunity with whatever terms and conditions regarding the amount and types of damages that it had when it waived the State's immunity by legislation prior to 1973. The power to limit liability is the same, whether it is exercised by waiving or reinstating the State's immunities. Indeed, there is no valid distinction between the limited waiver of immunity up to the limits of liability insurance, which was the law in Montana for many years, and the imposition of statutory damage limits pursuant to Article II, section 18, as amended. The fundamental authority of the legislature is identical in each instance and only the amounts are different.

"Therefore, I conclude that the limitations on the amount and types of damages awardable against the State in accordance with sections 2-9-101 and 2-9-104, MCA, constitute a valid, constitutional reinstatement of governmental immunity within the meaning of Article II, section 18, Montana Constitution, as amended."

Accepting arguendo the District Court's conclusion that the legislature could either reinstate total governmental immunity, or provide limited immunity against certain types of damages (whether called waiver or reinstatement), we come to the next question that logically follows from the District Court's determination: Did the District Court properly grant summary judgment against all but plaintiff's claimed economic damages in the light of the provisions of section 2-9-104, MCA?

We call attention, now, to the language in section 2-9-104(2), MCA, to the effect that a governmental unit, in its sole discretion, may authorize payments for noneconomic damages or economic damages in excess of $300,000, or both, upon "petition of plaintiff following a final judgment". We find it plainly the legislative scheme under section 2-9-104(2), that a tort claim against a governing body of this state may proceed to final judgment on all claims for damages which the plaintiff may have, both for noneconomic and economic damages. After "final judgment" under section 2-9-104(2), the plaintiff may petition the governmental body for noneconomic damages, or for economic damages in excess of $300,000.

-6-

Our duty in interpreting a statute is to give effect to the objects of the statute, to construe it so as to promote justice, and to give such construction to the statute as will preserve the constitutional rights of the parties. Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 314 P.2d 866. Neither statutory nor constitutional construction by us should lead to absurd results if reasonable construction will avoid it. State v. School District No. 1 of Fergus County (1960), 136 Mont. 453, 348 P.2d 797, 78 A.L.R.2d 1012. Governmental units in Montana are not immune from suits for torts. Section 2-9-102, MCA. Section 2-9-104 does not make a governmental unit of the State of Montana immune from suit. Rather, it limits the governmental liability to economic damages not in excess of $300,000. It then goes one step further and provides that other damages, or economic damages in excess of $300,000, may be sought by petition from the governmental entity and by its grace, upon "petition of plaintiff following a final judgment." In order to petition the governmental unit for the exercise of its grace, there must be a "plaintiff" and there must be a "final judgment." It may be argued that the plaintiff here has a final judgment against her for noneconomic damages, but that argument begs the question. Section 2-9-104, interpreted as we see it, provides a method for a plaintiff to obtain a determination in a judicial setting of damages beyond economic damages in the amount of $300,000 after which petition to the governmental body can be made. Unless a plaintiff is allowed to proceed to final judgment on all claimed damages, where a governmental entity is a defendant, the legislative purpose as set out in section 2-9-104(2), MCA, would be frustrated.

Where the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there

is nothing for a court to construe. Clark v. Hensel Phelps Const. Co. (1977), 172 Mont. 8, 560 P.2d 515; Security Bank and Trust Company v. Connors (1976), 170 Mont. 59, 550 P.2d 1313.

The prosecution of a tort claim against a governmental entity, or a defense of the same, under this interpretation of section 2-9-104, will present no real problem or difficulty to reasonably adept counsel. In this case, in fact, the complaint was amended to set forth specifically the economic and noneconomic damages. By the use of special interrogatories, the jury will be instructed, if it finds for the plaintiff, to determine both economic and noneconomic damages. When these are entered in a final judgment, the amount of "governmental liability" can be determined. The amounts, if any, in excess of the governmental liability, under section 2-9-104, can be pursued at plaintiff's pleasure following a final judgment.

We see no waste of judicial resources in so providing. Certainly the determination of damages in a judicial setting far outweighs the determination of an award by a governmental entity bound by no rules and bare of precedent.

There are other reasons which lead us to interpret the statute as we do. We can envision any number of situations in which the economic damages might exceed $300,000. If we were to affirm the District Court, how in a proper case would the excess of economic damages over $300,000 be determined? Undoubtedly, an affirmance of the District Court would result in the refusal of any evidence of damages beyond that figure in future cases.

Another situation that we can envision is one where a governmental entity is sued as a joint tortfeasor with one or more defendants which are not governmental entities. In determining comparative negligence in such a situation, it

-8-

will be far easier for the District Court to allow evidence of all damages of whatever kind or nature, and if the verdict should require it, thereafter to apply the limitations of governmental liability found in section 2-9-104, MCA. It is instructive to remember that:

> "It is well established that by consenting to be sued the state does nothing more than waive its immunity from action. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. Thus, liability of the state for tort cannot be predicated upon the fact that the state has entered its general statutory consent to be sued, directing the manner in which suits may be brought by those having claims against the state. Neither does a special statute permitting suits on particular claims concede the justice of the claims. Statutory consent to be sued merely gives a remedy to enforce a liability and submits the state to the jurisdiction of the court, subject to its right to interpose any lawful defense." 57 Am.Jur.2d 81, Municipal Etc. Tort Liability, §72.

And again:

> "Consent of the state to be sued upon claims against it by private persons is generally given expressly by statutory enactment directing in what manner and in what court such suits may be brought; the general purpose and effect of such statutes, as commonly understood, is to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination, in the form of a judgment, of the rights of the parties . . ." 72 Am.Jur.2d 511, States Etc., §120.

We determine therefore, that the effect of section 2-9-104, MCA, is to limit the remedy available against the state or governmental entity after its liability has been determined by final judgment, except such further payment as the governmental entity may by grace provide. Therefore the summary judgment of the District Court against types of damages not authorized in section 2-9-104, MCA, prior to final judgment is premature. This does not mean that the District Court would not have power to grant a summary judgment where a governmental entity is a defendant on issues not encompassed in section 2-9-104, MCA.

We therefore do not reach the constitutional or other issues raised by the parties in this case as they are not properly before us at this time.

Reversed and remanded with directions to set aside the summary judgment in favor of the State. The denial of summary judgment in favor of the plaintiff is affirmed without prejudice.

_____
Justice

We Concur:


_____
Chief Justice

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell, dissenting.

I respectfully dissent.

Here the District Court entered judgment denying plaintiff's claim for noneconomic damages, holding the statutory limitation constitutional. On appeal the majority have reversed this judgment as premature because a final judgment including noneconomic damages claimed by plaintiff was not entered. In my view this is error.

The Montana Rules of Civil Procedure expressly provide that the District Court "may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Rule 54(b), M.R.Civ.P. The District Court did this. This rendered the judgment appealable as a final judgment. Rule 1, M.R.App.Civ.P.

The constitutionality of section 2-9-104, MCA, was the only issue raised, briefed, researched or argued in the District Court. This Court has consistently held that it will not review or determine on appeal issues which were not raised in the District Court. Mont. Ass'n. of Underwriters. v. State,etc. (1977), 172 Mont. 211, 563 P.2d 577; Spencer v. Robertson (1968), 151 Mont. 507, 445 P.2d 48; Clark v. Worrall (1965), 146 Mont. 374, 406 P.2d 822; State Highway Commission v. Yost Farm Company (1963), 142 Mont. 239, 384 P.2d 277. Yet here the majority have decided this case on an issue not raised, briefed or argued by any party either in the District Court or upon appeal.

Section 2-9-104, MCA, provides, among other things, that the State is not liable for noneconomic damages in a tort action such as we have here. The statute provides in pertinent part:

"(1) Neither the state . . . nor any . .
. political subdivision of the state is liable
in tort action for:

"(a) noneconomic damages; or

" . . . ."

- 11 -

If the State has no liability for noneconomic damages, how can a final judgment that includes noneconomic damages be entered against the State?

There is only one way--by declaring the statute unconstitutional. But here the District Court declared the statute constitutional. In so doing, the District Court upheld the statutory limitation on the State's liability and entered the only final judgment it was empowered to enter under such circumstances. This placed the question of constitutionality of the statute squarely in issue in this appeal.

The majority opinion avoids ruling on this issue by interpreting the statute to require a judicial determination of the amount of noneconomic damages as a condition precedent to plaintiff petitioning the legislature for payment thereof as a matter of grace. In my opinion this is a tortured construction of the statute.

The relevant portion of the statute reads as follows:

> "(2) The legislature . . . may, in its sole discretion, authorize payments for noneconomic damages . . . upon petition of plaintiff following a final judgment . . . ." Section 2-9-104(2), MCA. (Emphasis added.)

In my view the quoted portion of the statute plainly says that the legislature, in its sole discretion, may authorize such payments for noneconomic damages as it sees fit after final judgment; it may deny any payment at all, or it may authorize payment in part and deny payment in part, or it may pay such damages in full as it alone may determine. Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. Keller v. Smith (1976), 170 Mont. 399, 553 P.2d 1002; Dunphy v. Anaconda Company, (1968), 151 Mont. 76, 438 P.2d 660. Our function is simply to declare what is contained in the statute, and neither insert what has been omitted nor omit what has been inserted. Section 1-2-101, MCA; Mont. Ass'n of Underwriters v. State, etc., supra; Clark v. Hensel Phelps Const.

Co. (1977), 172 Mont. 8, 560 P.2d 515; Hammill v. Young (1975), 168 Mont. 81, 540 P.2d 971.

Where the legislature has sole discretion over whether payment of noneconomic damages shall be authorized and the amount thereof, how can the statute be interpreted to require a judicial determination of the amount of noneconomic damages in a final judgment? As I see it, this would be at odds with legislative intent regarding determination thereof. No discernable purpose would be served thereby. The amount of noneconomic damages in a judgment is simply a lump sum commonly commingled with economic damages. The legislature is not bound by it and is perfectly capable of determining the amount of noneconomic damages it is willing to pay as a matter of grace rather than as a matter of liability. Additionally it is a waste of time, the taxpayers' money, and judicial resources to engage in such a meaningless exercise. The law does not require idle acts. Section 1-3-223, MCA. For these reasons I do not believe the legislature intended to empower the trial courts to adjudicate the amount of noneconomic damages for which the State is not liable under the statute and include such items in a final judgment before the plaintiff can petition the legislature for payment thereof.

I believe this Court should determine the sole issue raised by the parties in this appeal--the constitutionality of section 2-9-104, MCA.

_____
Chief Justice